Michael T. GARRETT, Plaintiff,

v.

CIRCUIT CITY STORES, INC., Defendant.

No. CIV.A.3:04–CV–556–M.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 19, 2004.

Robert E Goodman, Jr, Law Office of Robert Goodman, Dallas, TX, for Michael T Garrett, Plaintiff.

John G Harrison, Ogletree Deakins Nash Smoak & Stewart, Dallas, TX, for Circuit City Stores, Inc., Defendant.

John S Odom, Jr, Jones Odom Davis & Politz, Shreveport, LA, for Reserve Officers Association, Movant.

Samuel F Wright, Law Office of Samuel F Wright, Washington, DC, for Reserve Officers Association, Movant.

## MEMORANDUM OPINION AND ORDER

LYNN, District Judge.

Before the Court is Defendant's Motion to Compel Arbitration. On August 17, 2004, the Court held a hearing on the Motion and took the matter under advisement. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion, as further detailed below.

## BACKGROUND

Plaintiff, Michael Garrett, was hired by Defendant Circuit City Stores, Inc. ("Circuit City") in February, 1994. Between the time of his hiring and his termination in March, 2003, Garrett was employed as a manager in Defendant's Atlanta, Baltimore, Denver and Dallas service centers. During this period, Garrett also served as a Reserve Officer with the United States Marine Corps.

One year after he was hired by Circuit City, the company adopted an "Associate Issue Resolution Program" ("the Program"). The Program consisted of a nationwide policy for resolving employment-related disputes. Like all Circuit City employees, Garrett received a copy of the Dispute Resolution Rules and Procedures ("DRP"), and an opt-out form by which he was permitted to exclude himself from Circuit City's binding arbitration agreement. This documentation also informed Plaintiff that he had thirty days in which he could consult a lawyer before determining whether to exercise his opt-out rights. Plaintiff acknowledged, in writing, his receipt of the DRP, but did not opt-out of the arbitration provision within the thirty day time frame.

Between December, 2002 and March, 2003, as the American military was preparing to engage in combat operations in Iraq, Plaintiff alleges that he began to receive unjustified discipline and criticism from his supervisors. He suspects that this conduct was motivated by his potential long-term deployment with the Marine Corps. In March, 2003, Plaintiff was terminated from his position at Circuit City. Plaintiff alleges that the termination was due solely to his status as a Marine Reserve Officer.

Plaintiff has sued Circuit City for discrimination based on his military status, claiming a violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301. Circuit City has filed a Motion to Compel Arbitration of this dispute. Circuit City contends that Plaintiff's refusal to opt-out of binding arbitration was an unequivocal waiver of Plaintiff's right to have his dispute with Circuit City decided by a jury. Plaintiff responds that USERRA protects his right to proceed to trial, and supersedes any contrary agreement between the parties.

## ANALYSIS

Defendant's Motion asks the Court to rule that the Federal Arbitration Act ("FAA") requires arbitration of the parties' dispute. The FAA was enacted to

"reverse the longstanding judicial hostility to arbitration agreements," and it has led to a liberal judicial policy in favor of enforcing arbitration agreements against employees. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). However, not all arbitration agreements are enforceable under the FAA. In determining whether to enforce an arbitration agreement, the Court is to consider two principal issues: (1) whether the dispute is covered by a valid agreement to arbitrate disputes; and (2) whether there is an external legal constraint prohibiting the Court from requiring arbitration of the claim. *Webb v. Investacorp, Inc.* 89 F.3d 252, 257–58 (5th Cir.1996).

If the binding arbitration provision contained in the Program applies to the instant dispute, the Court will need to determine whether the arbitration provision is superseded by USERRA's guarantee of a federal forum for aggrieved employees. The issue is one of first impression in this jurisdiction.

### I. *Garrett and Circuit City Had a Valid Arbitration Agreement*

■ Under Texas law, an at-will employment agreement can be modified by either party. The party making the modification must prove: (1) the other party was notified of the change, and (2) the other party accepted the new terms. *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex.1986). In order to demonstrate acceptance, an employer must prove that the employee continued working for the employer after being notified

that the employer was modifying the parties' agreement. *Id.* at 229. When the modification includes a binding arbitration provision, it is also necessary that the agreement impose bilateral obligations on both the employer and employee. *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002). Proof that an employee was given the opportunity to opt-out of the modification, but did not do so, is additional evidence demonstrating an employee's acceptance. *See Circuit City Stores, Inc. v. Curry*, 946 S.W.2d 486, 489 (Tex.App.-Fort Worth 1997, no writ).

■ Here, the parties agree that Circuit City notified Mr. Garrett that it was modifying the employment agreement to include a binding arbitration provision.[1] The parties also agree that Garrett was given an opportunity to opt-out, but did not do so. Garrett continued to work for Circuit City for eight years after notice of the first arbitration provision, and three months after its most recent revision was adopted. Under Texas law, these indicia of acceptance create a presumption that Garrett understood the contents of the contract. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex.1996). Unequal bargaining power alone is no ground for challenging an agreement to arbitrate. *Id.* at 90–91. The Court holds that under the circumstances here an agreement was formed between Garrett and Circuit City to arbitrate their disputes.

### II. *USERRA Supersedes the Parties' Arbitration Agreement*

■ Having decided that the dispute between Garrett and Circuit City is governed

---

1. The version of the DRP received by Garrett in 1995 included a unilateral arbitration agreement. The agreement bound Garrett to arbitrate his disputes, but permitted Circuit City to adjudicate its disputes in a court of law. However, the 1995 agreement permitted Circuit City to make annual revisions, upon providing associates with thirty days

notice of its changes, and it provided that any dispute would be governed by the most current revision of the DRP. Therefore, the January 2003 DRP is the version applicable to this dispute. That revision included a bilateral agreement, in which all disputes between Circuit City and its employees would proceed to arbitration.

by a valid arbitration agreement, the remaining question is whether any external legal constraint excuses Garrett from arbitrating his claim. Garrett, as the party resisting arbitration, has the burden of proving that Congress intended USERRA to exempt his dispute from the requirements of the FAA. *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647. The Court must attempt to divine Congressional intent from the text of the statute, the legislative history, and any proof of an inherent conflict between arbitration and the underlying purposes of USERRA. *Id.*

In opposing the Motion to Compel Arbitration, Plaintiff cites USERRA, and specifically 38 U.S.C. § 4302, which provides that:

(a) Nothing in this chapter shall supersede, nullify or diminish any Federal or State law... contract, agreement, policy, plan, practice or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.

(b) This chapter supersedes any State law ... contract, agreement, policy, plan, practice or other matter that reduces, limits or eliminates in any matter any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

One of the rights provided under USERRA is the right of plaintiffs to bring suit without fees or costs being imposed, in federal court, with the potential assistance of the Attorney General of the United States. *See* 38 U.S.C. § 4323. Plaintiff contends that if the arbitration agreement between him and Circuit City is enforced, he will be deprived of this right, in violation of Section 4302(b).

USERRA's legislative history adds support to Plaintiff's argument. Congress expressly considered the potential conflict between a binding arbitration agreement between an employer and employee, and an employee's right to a federal jury trial. The House Report characterized § 4302(b) in this way:

[It] would reaffirm a general preemption as to State and local laws and ordinances, as well as to employer practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights.... It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law.

House Report No. 103–65, 1994 *United States Code Congressional & Administrative News* 2453.

Defendant has a three-fold response to Plaintiff's interpretation of USERRA's text and legislative history. First, Defendant argues that USERRA's legislative history indicates § 4302(b) is limited to collective bargaining disputes. The Court finds this point unpersuasive.

Second, Defendant argues that a USERRA plaintiff's right to a federal jury trial, without being subject to fees and costs, is a procedural right, and that Section 4302(b) of USERRA should only apply to substantive rights. Defendant claims that a private employment agreement may therefore waive an employee's right to trial by jury without violating the statute. Defendant cites several cases for its proposition that procedural rights are not due the same statutory protections as substantive rights. In *Mitsubishi Motors,* for instance, the Supreme Court required arbitration of a Sherman Act claim after determining that "if Congress intended the substantive protection afforded by a

given statute to include protection against waiver of the right to a judicial forum, that intention would be deducible from text or legislative history." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *see also, Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 661 (5th Cir.1995) ("we find no clear indication that Congress was likewise concerned with protecting employees who agree to arbitrate [ADEA] claims...").

■ Analyzing the precedent cited by Defendant, the Court disagrees with Defendant's conclusion and finds that USERRA's text and legislative history evidence Congress's clear intent to treat the right to a jury trial as a right not subject to waiver in favor of arbitration. Furthermore, the Court is cognizant that USERRA and its predecessor statutes have been liberally interpreted, "for the benefit of those who left private life to serve their country in its hour of great need." *Alabama Power Co. v. Davis,* 431 U.S. 581, 584, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977), *citing Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).

Defendant compares USERRA to provisions of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2651–53, and Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 218, which Defendant argues have never been construed as impediments to arbitration. However, neither of the cited statutes includes a provision as comprehensive as USERRA's Section 4302(b). While the FMLA and FLSA prohibit any employment agreements that diminish the rights provided to employees under those statutes, USERRA also protects employees from any agreements that impose "additional prerequisites to the exercise" of their rights. *See* 29 U.S.C. § 2653; 29 U.S.C. § 218; 38 U.S.C. 4202(b). USER-RA's legislative history indicates that Congress considered a binding arbitration agreement to be such an impediment, and that arbitration between an employer and a USERRA-eligible employee would thus not be binding.

Finally, Defendant argues that *Gilmer* precludes the Plaintiff's argument. However, in *Gilmer,* the plaintiff conceded that the ADEA did not expressly or impliedly restrict arbitration agreements. The Supreme Court merely addressed the question of whether mandatory arbitration would be inherently "inconsistent with the statutory framework and purposes of the ADEA". *Gilmer,* 500 U.S. at 26–27, 111 S.Ct. 1647. Since the policies underlying the FAA are "addressed with a healthy regard for the federal policy favoring arbitration", the Court found no reason to preclude mandatory arbitration under the Act. *Id.* With regard to USERRA, on the other hand, the Court finds that Congress intended to and did supersede private binding arbitration contracts.

■ The Court therefore holds that the agreement between Garrett and Circuit City for binding arbitration is superseded by 38 U.S.C. § 4302(b). However, there is nothing in USERRA that precludes non-binding arbitration prior to jury trial in federal court. If a contract contains both lawful and unlawful provisions, Texas law instructs the Court to enforce the lawful portion of the contract so long as the parties would have entered into a contract that omitted the illegal portion of the original bargain. *See Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc.,* 128 F.3d 872, 880 (5th Cir. 1997). Had Circuit City been aware of USERRA's restrictions in 1995, the Court concludes that the arbitration agreement signed by Garrett would have provided for non-binding arbitration.

## CONCLUSION

The Court hereby orders the parties to commence and conclude a non-binding arbitration proceeding within sixty days if Plaintiff is not precluded by military service from doing so. (If he is so precluded, he shall advise the Court, in writing, within ten days). If Circuit City decides not to proceed with non-binding arbitration, it shall advise the Court in ten days, and if it does so, no such proceeding shall be required.

**SO ORDERED.**