United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 11, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-11360

_____

MICHAEL T. GARRETT,

Plaintiff-Appellee,

versus

CIRCUIT CITY STORES, INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and KING and DENNIS, Circuit Judges.

EDITH H. JONES, Chief Judge:

The issue in this case is whether a provision of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 39 U.S.C. § 4302(b), which protects the employment rights of members of the armed forces, precludes the enforcement of individual contracts to arbitrate such disputes. We hold that it does not. Accordingly, we reverse the district court's contrary conclusion.

## I.    BACKGROUND

Appellee Garrett was hired by Circuit City in 1994, while he was a member of the Marine Reserves. In 1995, Circuit City adopted an "Associate Issue Resolution Program" consisting of a

nationwide policy for resolving employment-related disputes. When the Associate Issue Resolution Program was implemented, each associate, including Garrett, received a copy of a receipt form, an Associate Issue Resolution Handbook, a Dispute Resolution Rules and Procedures ("Arbitration Rules"), and an Arbitration Opt-Out Form. Garrett acknowledged, in writing, his receipt of the policy information, and did not opt-out of the arbitration provision within the thirty-day time period allowed under the policy.

Garrett alleges that between December 2002 and March 2003, as the American military was preparing for combat in Iraq, he began to receive unjustified criticism and discipline from his supervisors. In March 2003, Garrett was fired, an action he attributes solely to his status as a Marine Reserve Officer.

Garrett sued under USERRA, and the district court agreed with his contention that § 4302(b) of USERRA overrides the enforcement of the arbitration agreement. Circuit City has appealed from the court's judgment denying its motion to compel arbitration.

## II. DISCUSSION

This Court reviews de novo a district court's ruling on a motion to compel arbitration. Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 536 (5th Cir. 2003).

The arbitration agreement between Garrett and Circuit City provided that claims arising out of cessation of employment

2

would be settled by final and binding arbitration, enforceable by and subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. To determine whether the agreement between the parties is enforceable, we first review the Supreme Court's arbitration decisions, and then construe USERRA.

The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S. Ct. 1647, 1651 (1991). The FAA states that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Court has reinforced the strong federal policy favoring arbitration. Mitsubishi, 473 U.S. at 626-27, 105 S. Ct. at 3353-54. Accordingly, once a party makes an agreement to arbitrate, that party is held to arbitration "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27, 105 S. Ct. 3346, 3353-54 (1985). Garrett bears the burden to prove that Congress intended to preclude a waiver of a judicial forum for USERRA claims. See Gilmer, 500 U.S. at 26, 111 S. Ct. at 1652.

In Gilmer, the Supreme Court considered the favored status of arbitration in the employment context when an individual subject to an arbitration agreement alleged a violation of federal

3

discrimination statutes. Gilmer, 500 U.S. at 23, 111 S. Ct. at 1650. The Court held that statutory discrimination claims under the Age Discrimination in Employment Act were subject to mandatory arbitration under the FAA. Id. at 35, 111 S. Ct. at 1657. In so holding, the Court clarified several issues concerning the FAA's application: (1) "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to FAA," id. at 26, 111 S. Ct. at 1652; (2) although arbitration involves submission to an alternate, nonjudicial forum, it does not require a party to forego substantive rights afforded by the particular statute, id.; (3) arbitration is not inconsistent with the important social policies being addressed by federal statutes, id. at 28, 111 S. Ct. at 1653; and (4) limited discovery provisions are nevertheless sufficient to allow a fair opportunity to present discrimination claims, id. at 31, 111 S. Ct. at 1654-55.

The Court also distinguished between an employer/employee agreement enforceable pursuant to the FAA and union collective bargaining agreements. Id. at 33-34, 111 S. Ct. at 1656. Although both agreements may include arbitration provisions, they may require different treatment under federal law. Id. at 34-35, 111 S. Ct. at 1656-57. When all employees in a unit are represented by a union, the collective interest of the bargaining unit may impinge upon individual substantive rights. Id. To that end, pre-Gilmer decisions reflected a concern for "the tension between collective representation and individual statutory rights." Id. at 35, 111

4

S. Ct. at 1657.  The Court stated, however, that such tension is not present in the enforcement of individual agreements between an employee and the employer.  See id.

Finally, Gilmer elaborated on the difference between substantive rights conferred by Congress, such as the prohibition of age discrimination, which must be preserved, even in the arbitral forum, and procedural rights, which include choice of forum and may be waived without running afoul of the substantive intent of Congress.  Id. at 26, 111 S. Ct. at 1652.[1]

Because the parties agreed to arbitrate the dispute at issue,[2] the agreement is enforceable unless Garrett can demonstrate

---

[1]    Following Gilmer, courts have regularly held that claims by employees arising under federal and state employment statutes are subject to the FAA and mandatory arbitration.  See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123, 121 S. Ct. 1302, 1313 (2001)(stating that "[t]he Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of Congressional enactments giving employees specific protection against discrimination prohibited by federal law"); Miller v. Pub. Storage Mgmt., Inc., 121 F.3d 215 (5th Cir. 1997)(holding that Americans With Disabilities Act claims are subject to FAA); Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656 (5th Cir. 1995)(holding that Older Workers Benefit Protection Act does not preclude arbitration of ADEA disputes); Saari v. Smith Barney, Harris Upham & Co., Inc., 968 F.2d 877 (9th Cir. 1992)(holding that Employee Polygraph Protection Act claims can be subject to mandatory arbitration); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 220 (5th Cir. 1991) (holding that individual Title VII claims can be subjected to compulsory arbitration pursuant to FAA); Bird v. Shearson Lehman/Am. Express, Inc., 926 F.2d 116, 117-22 (2d Cir. 1991)(compelling arbitration of ERISA claim and noting that "ERISA's text and legislative history do not support a conclusion that Congress intended to preclude arbitration of [ERISA] claims"); Martin v. SCI Mgmt., L.P., 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003)(compelling arbitration of FMLA claims and noting no indication of Congressional intent that FMLA claims are not arbitrable pursuant to FAA); Carter v. Countrywide Credit Indus., Inc., 189 F. Supp. 2d 606 (N.D. Tex. 2002)(compelling arbitration of Fair Labor Standards Act claims), aff'd 362 F.3d 294 (5th Cir. 2004).

[2]    The district court held that Garrett and Circuit City agreed to arbitrate their disputes.  Garrett v. Circuit City Stores, Inc., 338 F. Supp. 2d 717, 720 (N.D. Tex. 2004).  We agree.  The parties concur that Garrett had notice of Circuit City's adoption of the arbitration policy and an opportunity to opt-out, but he did not do so.  Garrett worked for Circuit City for several years

that Congress intended to preclude arbitration. See Mitsubishi, 473 U.S. at 626-27, 105 S. Ct. at 1353-54. Congressional intent "will be discoverable in the text of [USERRA], its legislative history, or an 'inherent conflict' between arbitration and [USERRA]'s underlying purposes." Gilmer, 500 U.S. at 26, 111 S. Ct. at 1652.

## 1. Text of USERRA

USERRA's antidiscrimination provision prohibits an employer from denying initial employment, reemployment, or any other benefit of employment to a person on the basis of membership in a uniformed service, application for membership, performance of service, application for service, or obligation of service. 38 U.S.C. § 4311(a). Garrett contends, and the district court agreed, that § 4302(b) of USERRA precludes binding arbitration in stating:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

According to Garrett, a "right or benefit provided by" USERRA is a plaintiff's right to bring suit in federal court. Indeed, USERRA

---

after the policy was implemented. Under Texas law, it is presumed that Garrett understood and accepted the terms. See Hathaway v. General Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986)(noting that employees who continue to work after an employer has notified them of changes in the employment contract are deemed to have accepted the changes). Consequently, there was a valid agreement between Garrett and Circuit City to arbitrate disputes.

provides two methods for a protected person to enforce substantive rights against a private employer. A person may file a complaint with the Secretary of Labor (who will investigate and attempt to resolve the complaint) and request that the Secretary refer the matter to the Attorney General for further prosecution. 38 U.S.C. § 4323(a)(1). Alternatively, a person may pursue a civil action in federal court, forgoing all agency participation. 38 U.S.C. § 4323(a)(2).[3] In this case, Garrett chose the second method.

---

[3] 38 U.S.C. § 4323 states:

(a) Action for relief.--
    (1) A person who receives from the Secretary a notification pursuant to section 4322(e) of this title of an unsuccessful effort to resolve a complaint relating to a State (as an employer) or a private employer may request that the Secretary refer the complaint to the Attorney General. If the Attorney General is reasonably satisfied that the person on whose behalf the complaint is referred is entitled to the rights or benefits sought, the Attorney General may appear on behalf of, and act as attorney for, the person on whose behalf the complaint is submitted and commence an action for relief under this chapter for such person. In the case of such an action against a State (as an employer), the action shall be brought in the name of the United States as the plaintiff in the action.
    (2) A person may commence an action for relief with respect to a complaint against a State (as an employer) or a private employer if the person--
        (A) has chosen not to apply to the Secretary for assistance under section 4322(a) of this title;
        (B) has chosen not to request that the Secretary refer the complaint to the Attorney General under paragraph (1); or
        (C) has been refused representation by the Attorney General with respect to the complaint under such paragraph.
(b) Jurisdiction.--
    (1) In the case of an action against a State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action.
    (2) In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with

7

It is not evident from the statutory language that Congress intended to preclude arbitration by simply granting the possibility of a federal judicial forum.  As noted above, the Supreme Court has held that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum."  Mitsubishi, 473 U.S. at 626-27, 105 S. Ct. at 1353-54.  In cases involving the Sherman Act,[4] the Securities Exchange Act of 1934,[5] the civil protections of the Racketeer Influenced and Corrupt Organizations Act (RICO),[6] and the Securities Act of 1933,[7] the Court has held substantive statutory rights enforceable through arbitration.  With this in mind, it is significant that Section 4302(b) does not mention mandatory arbitration or the FAA, notwithstanding that the Gilmer decision, issued only three years before enactment of § 4302(b), extended mandatory arbitration to employment agreements.  When Congress enacts laws, it is presumed to be aware of all pertinent judgments

the laws of the State.
(3) In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action.

[4] Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S. Ct. 3346 (1985).

[5] Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 107 S. Ct. 2332 (1987).

[6] Id.

[7] Rodriquez de Quijas v. Shearson/American Exp., Inc., 490 U.S. 477, 109 S. Ct. 1917 (1989).

8

and opinions of the judicial branch.  United States v. Barlow, 41 F.3d 935, 943 (5th Cir. 1994).  Congress was on notice of Gilmer in 1994 but did not speak to the issue in the text of § 4302(b).  The text of § 4302(b) is not a clear expression of Congressional intent concerning the arbitration of servicemembers' employment disputes.[8]

When properly interpreted, § 4302(b) can be harmonized with the FAA and mandatory arbitration.  Its operation and meaning turn, in part, on the terms "right or benefit provided by this chapter."  The purpose of § 4302(b) is the protection of "any right or benefit provided by [Chapter 43 of USERRA]."  38 U.S.C. § 4302(b).  Chapter 43 codifies the rights of soldiers and reservists to reemployment, to leaves of absence, to protection against discrimination and to health and pension plan benefits, among others.  See generally 38 U.S.C. §§ 4301-4304, 4311-4319.  These are substantive rights.  Additionally, § 4303(2) defines rights for the purposes of the chapter:

> The term "benefit", "benefit of employment", or "rights and benefits" means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

___

[8]     Notably, the Department of Labor does not consider USERRA to contain any expression of Congressional intent to preclude arbitration.  In the regulations concerning USERRA, 20 C.F.R. § 1002.7, there is no mention of mandatory arbitration.

38 U.S.C. § 4303(2). Again, the defined substantive rights relate to compensation and working conditions, not to affording a particular forum for dispute resolution. An exclusive judicial forum is not a right protected by Chapter 43 of USERRA, nor is it within the scope of § 4302(b).

An agreement to arbitrate under the FAA is effectively a forum selection clause, see EEOC v. Waffle House, Inc., 534 U.S. 279, 295, 122 S. Ct. 754, 765 (2002), not a waiver of substantive statutory protections and benefits.[9] Thus, § 4302(b) does not conflict with the FAA's policy to encourage the procedural remedy of arbitration. As recognized by the United States Supreme Court:

> [B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. . . . We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention would be deducible from text or legislative history.

Mitsubishi, 473 U.S. at 628, 105 S. Ct. at 3354. Congress took no specific steps in USERRA, beyond creating and protecting substantive rights, that could preclude arbitration.

The district court overlooked this important distinction between procedural and substantive rights. Compare Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656, 660 (5th Cir. 1995)

---

[9] For purposes of this dispute, the parties' arbitration rules require the Arbitrator to enforce the substantive rights provided by USERRA as the applicable law and to grant relief for any violations.

(holding, with regard to the Older Workers Benefit Protection Act, that there is "no indication that Congress intended the OWBPA to affect agreements to arbitrate employment disputes" and that "the OWBPA protects against the waiver of a right or claim, not against the waiver of a judicial forum.")

Garrett also contends that having to arbitrate his claims results in a reduction in the total package of rights and benefits afforded by USERRA. The right or benefit that arbitration allegedly infringes upon is found in USERRA § 4323(b)(3), which the district court interpreted as a "guarantee of a federal forum for aggrieved employees." Garrett, 338 F. Supp. 2d at 720. Section 4323(b)(3) provides that "the district courts of the United States shall have jurisdiction of the action" against a private employer. This language, however, neither guarantees a right to a federal court trial nor forbids arbitration as an alternate forum. On the contrary, USERRA provides several means for the resolution of disputes, and there is no guarantee of a federal forum for aggrieved employees.

In Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 110 S. Ct. 1566 (1990), the Court construed similar language in Title VII to confer concurrent jurisdiction on federal and state courts rather than exclusive federal jurisdiction. Id. at 823-26, 110 S. Ct. at 1568-70. Concurrent jurisdiction suggests a broad right of the parties to select a forum, including the arbitral forum. Gilmer, 500 U.S. at 29, 111 S. Ct. at 1654. Because

11

§ 4323(b)(3) of USERRA, like the language in Donnelly, confers concurrent jurisdiction, arbitration is a permissible forum choice. See Bird, 926 F.2d at 119-20 (broad and in some instances exclusive access to federal forum for ERISA claims is not evidence of congressional intent to preclude arbitration).

Next, while § 4323 outlines USERRA enforcement provisions for private or state employees, § 4324 affords different procedures for federal government employees, which include adjudicating claims in an administrative tribunal, the Merit Systems Protection Board ("MSPB"). This is significant, because in Gilmer, the Court phrased the relevant inquiry as whether Congress had precluded "arbitration or other nonjudicial resolution" of claims. Gilmer, 500 U.S. at 28, 111 S. Ct. at 1563. The MSPB option evidences an intent to allow alternative means of dispute resolution for employees protected by USERRA. Thus, a federal judicial forum is not guaranteed to all employees under USERRA; rather, a federal judicial forum is available to some employees and can be claimed or waived, just as in other antidiscrimination statutes.

## 2. Legislative history of USERRA

Garrett emphasizes, as did the district court, that a portion of the 1994 legislative history of § 4302 confirms Congressional intent to forbid resort to binding arbitration. The House Committee Report states:

> Section 4302(b) would reaffirm a general preemption as to State and local laws and ordinances, as well as to

12

employer practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights. See Peel v. Florida Department of Transportation, 600 F.2d 1070 (5th Cir. 1979); Cronin v. Police Dept. of City of New York, 675 F. Supp. 847 (S.D.N.Y. 1987) and Fishgold, supra, 328 U.S. at 285, which provide that no employer practice or agreement can reduce, limit or eliminate any right under chapter 43. Moreover, this section would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. See McKinney v. Missouri-K-T R. Co., 357 U.S. 265, 270 (1958); Beckley v. Lipe-Rollway Corp., 448 F. Supp. 563, 567 (N.D.N.Y. 1978). It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law. See Kidder v. Eastern Airlines, Inc., 469 F. Supp. 1060, 1064-65 (S.D. Fla. 1978).

H.R. REP. NO. 103-65, 1994, as reprinted in 1994 U.S.C.C.A.N. 2453.4.

We disagree that this snippet of legislative history should affect our interpretation of Section 4302(b). First, a powerful line of Supreme Court authority suggests that legislative history should rarely be used in statutory interpretation, because only the text of the law has been passed by Congress, not the often-contrived history. See, e.g., Exxon Mobil Corp. v. Allapattah Servs. Inc., 125 S. Ct. 2611, 2626 (2005). Even if legislative history may be consulted to resolve statutory ambiguity, id., we have found no ambiguity in this provision. Second, laying aside these controlling preliminary objections, the House Committee Report appears to be the only pertinent legislative history concerning § 4302(b); no comparable Senate Report has been identified. Such a scant record, unless explicit and on point,

13

hardly proves Congress's intention toward all cases involving arbitration. Moreover, what was left out of the legislative history is noteworthy. There is no recognition in the report of Gilmer's then-recent endorsement of individual agreements to arbitrate. In any event, the totality of the quoted language, along with its imbedded citations, strongly suggests that Congress intended § 4302(b) only to prohibit the limiting of USERRA's substantive rights by union contracts and collective bargaining agreements, and that Congress did not refer to arbitration agreements between an employer and individual employee.[10]

Finally, this court has rejected reliance on cases involving collective bargaining arbitration as a basis for avoiding arbitration of statutory claims under the FAA. Carter v.

---

[10]    In the cases cited by the Committee, courts prevented intrusions into the substantive rights of veterans by the operation of laws, contracts, or plans to which the employee was not or could not be a party. See McKinney v. Mo.-Kan.-Tex. R.R. Co., 357 U.S. 265, 78 S. Ct. 1222 (1958)(holding that collective bargaining agreements requiring use of a contractual grievance process are preempted by the statute when an employee asserts the rights to restoration and advancement created by the statute); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S. Ct. 1105 (1946)(finding that the 1940 statute is the basis for determining the seniority rights of a reemployed veteran, not the collective bargaining agreement or an arbitrator's interpretation of the agreement pursuant to a prior grievance proceeding); Peel v. Fla. Dep't of Transp., 600 F.2d 1070 (5th Cir. 1979)(holding that the Tenth and Eleventh Amendments do not bar enforcement of USERRA's predecessor statute against a state agency employer that denied reemployment on the basis of a state law limiting leaves of absence); Cronin v. Police Dep't of the City of N.Y., 675 F. Supp. 847 (S.D.N.Y. 1987)(holding predecessor statute preempts a state law, the effect of which was to limit pension credits and appointment date of reemployed police officer); Beckley v. Lipe-Rollway Corp., 448 F. Supp. 563 (N.D.N.Y. 1978)(holding 1978 version of statute required that reemployed veteran receive pension credits despite contrary polices and practices derived from terms of collective bargaining agreement and pension plan); Kidder v. E. Air Lines, Inc., 469 F. Supp. 1060 (S.D. Fla. 1978)(holding that an employee on military leave of absence was not required to exhaust the grievance process in the union contract and was entitled to holiday pay benefits despite contrary provision in collective bargaining agreement).

14

Countrywide Credit Indus., Inc., 362 F.3d 294, 298 (5th Cir. 2004). This is because, as noted supra, the Supreme Court explicitly distinguished between cases involving collective bargaining arbitration agreements and individually executed predispute arbitration agreements. Gilmer, 500 U.S. at 33-34, 111 S. Ct. at 1656. The Supreme Court "ultimately conclud[ed] that the former may not be subject to arbitration while the latter are." Carter, 362 F.3d at 298. While earlier arbitration cases arose during a time of judicial skepticism regarding arbitration, Gilmer, 500 U.S. at 34, 111 S. Ct. at 1656, the "mistrust of the arbitral process" expressed in such cases had been "undermined by [the Supreme Court's] recent arbitration decisions." Id. at 34 n.5, 111 S. Ct. at 1656 n.5; see also Mitsubishi, 473 U.S. at 626-27, 105 S. Ct. at 3354.

Accordingly, we do not conclude from this one piece of legislative history concerning § 4302(b) that Congress intended to exclude all arbitration under USERRA.

### 3. Inherent conflict

Garrett asserts that there is an inherent conflict between arbitration and USERRA's underlying structure and purposes.

Garrett contends that the administrative and enforcement authority granted by USERRA to the Department of Labor and to the Attorney General conflict with arbitration. In Gilmer, however, the plaintiff unsuccessfully urged that the EEOC's authority and

15

role in the enforcement of the ADEA precluded arbitration of disputes. See Gilmer, 500 U.S. at 28-29, 111 S. Ct. at 1653 ("[T]he mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration."). The same reasoning applies to USERRA, which, like the ADEA and Title VII, affords both civil actions by the agency and private actions by an employee. As in Gilmer, Congress did not intend the Secretary of Labor or the Attorney General to be involved in every dispute brought under USERRA. See 38 U.S.C. §§ 4322-24. Even if Garrett had chosen to involve the Attorney General in the dispute under § 4323, nothing in that section suggests that the Attorney General would not have been able to represent Garrett in arbitration. This reading of the statute is consistent with Waffle House, in which the Court held that the presence of an enforceable agreement to arbitrate under the FAA did not limit the authority of or remedies available to the EEOC if it elected to pursue a lawsuit on behalf of disability discrimination victims. 534 U.S. at 297-98, 122 S. Ct. at 766.

Further, the Arbitration Rules in this case provide a fair opportunity for Garrett to present and prevail upon a claim of a violation of USERRA. According to the Arbitration Rules, a neutral arbitrator is appointed and is bound to apply the applicable federal law. There are procedures for discovery,

16

subpoenas, and presentation of evidence,[11] to be followed by a written award from the Arbitrator.  If Garrett prevails, the Arbitrator is authorized to award all appropriate relief in accordance with applicable law.

Garrett has not shown, as is his burden, that arbitration under Circuit City's rules would fail to allow a fair opportunity to present his claims. See Carter, 362 F.3d at 298.  Thus, arbitration is not inconsistent with effective vindication of his USERRA right to be free from unlawful discrimination.

Garrett finally argues that the important public policy interest behind USERRA, embodying the protection of soldiers and thus the enhancement of American security, necessitates denying the request for arbitration.  Although we agree that the interests USERRA protects are important, it is wrong to infer that the servicemembers' substantive rights are not fairly and adequately protected by arbitration proceedings under the FAA.  USERRA's purposes can be fully realized through arbitration. See Gilmer, 500 U.S. at 28, 111 S. Ct. at 1653 (stating that "[t]he Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933 all are designed to advance important public policies, but . . . claims under those statutes are appropriate for

---

[11]   Gilmer's particular complaint about arbitration-imposed discovery cannot withstand the Court's analysis in Gilmer, which rejected similar complaints in favor of the "simplicity, informality and expedition of arbitration ..."  Gilmer, 500 U.S. at 31, 111 S. Ct. 1654-55 (internal quotations and citations omitted).  Like the NYSE Rules, the Arbitration Rules governing the instant case amply provide for discovery and the development of evidence.

arbitration"); <u>see also</u> <u>Mitsubishi</u>, 473 U.S. at 637, 105 S. Ct. at 3359 ("[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."). Enforcement of employment arbitration agreements does not disserve or impair the protections guaranteed by USERRA.

## III. CONCLUSION

For the reasons stated above, we hold that USERRA claims are subject to arbitration under the FAA. The court below erred in refusing to compel arbitration of Garrett's USERRA dispute with Circuit City. The judgment is REVERSED and REMANDED for further proceedings consistent with this opinion.