# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 12, 2009

Charles R. Fulbruge III
Clerk

No. 07-30794

BRYAN EDWARD BAUDOIN,

Plaintiff-Appellant,

v.

MID-LOUISIANA ANESTHESIA CONSULTANTS, INC., APMC; FRANCIS
X. ROBICHAUX; JOSEPH GERALD PATTON; JEFFREY T. RAPP; MARK
G. LEMARIE,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:07-CV-751

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Dr. Bryan Edward Baudoin appeals the district court's grant of Mid-Louisiana Anesthesia Consultants, Inc., APMC's ("MLAC") Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue as well as the district court's refusal to exercise supplemental jurisdiction over his state law claims against Dr. Francis X. Robichaux, Dr. Joseph Gerald Patton, Dr.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Jeffrey T. Rapp, and Dr. Mark G. Lemarie ("individually-named Defendants"), some of the principals in MLAC. We REVERSE and REMAND.

FACTUAL AND PROCEDURAL HISTORY

On March 29, 2004, Baudoin, a board certified anesthesiologist, and MLAC entered into a physician employment agreement ("PEA") for a term of two years commencing on May 3, 2004. Section 4 of the PEA specified that Baudoin's compensation would be $25,000 per month ($300,000 per year). Section 8(a) of the PEA stated that Baudoin "shall be offered partnership after two complete years of employment." Section 9 prefaced with the phrase "Notwithstanding anything in Section 8 hereof to the contrary . . . ", and contained provisions with respect to termination of the PEA. Section 10 specified that if Baudoin was employed by the Armed Forces, Baudoin and MLAC were to use their best efforts to permit Baudoin to render services to MLAC as long as such an arrangement was feasible, and that if Baudoin's service in the Armed Forces prevented or prohibited him from rendering full-time service to MLAC, MLAC had the right to negotiate accommodations. This section also explained that in the event the parties were unable to come to a mutual accommodation, the PEA could be terminated. Section 13, entitled "Severability" stated:

> Should any part of this Agreement be declared invalid, such shall not affect the validity of any remaining portion and any such remaining portion shall continue in force and effect as if this Agreement had been executed with such invalid portion eliminated, and it is hereby declared the intention of the parties hereto that they would have executed the remaining portion of this Agreement without including any such part or portion which may or any reason hereafter be declared invalid. Further, if the validity of any portion of this Agreement should be contested as invalid or unenforceable by any party hereto, all parties h [sic] hereby agree to submit any such dispute to binding arbitration under the rules of the American Arbitration Association to be held at Alexandria, Louisiana. The purpose of such arbitration shall include reformation of this Agreement, retroactive in effect, if possible, to make the Agreement valid, binding, and enforceable, in

keeping with the terms and spirit of the original Agreement as much as possible.

(emphasis added). At the time Baudoin entered into the PEA with MLAC, he was a member of the United States Army Reserve.

After his employment with MLAC commenced, Baudoin was counseled several times concerning his lack of productivity for MLAC, and was informed by the management of MLAC that if his productivity did not increase, he would not make partner. In the middle of November 2005, he was called to active duty with the United States Army at Walter Reed Army Medical Center for a ninety day tour of duty commencing on January 19, 2006. On January 13, 2006, the last day that Baudoin worked at MLAC prior to leaving for his active duty assignment, Rapp informed Baudoin "that the partners felt [he] wasn't carrying [his] load and [he] wasn't going to make partner."

When Baudoin returned from active duty, Patton told him that he was not going to make partner at the end of the term of the PEA, but that MLAC wanted Baudoin to sign a contract extension. During June 2006, Baudoin met with Robichaux, who informed Baudoin that while he would not be elevated to partner, his salary would be raised so that he would receive 85% of the compensation physicians who were shareholders of MLAC received. Under the new arrangement, Baudoin would earn approximately $510,000 per year. Even though Baudoin refused to sign a new two-year PEA, he began receiving and accepting the increased salary provided under the new contract beginning in August 2006. Baudoin resigned on December 1, 2006, and filed suit in federal district court against MLAC and the abovenamed physicians on April 30, 2007.

In his complaint, Baudoin alleged that MLAC breached the terms of Section 8(a) of the PEA by not granting him partnership in MLAC. He also alleged that MLAC and the individually-named Defendants violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"),

38 U.S.C. § 4301, et seq., by denying him partnership in MLAC due to his status as a member of the U.S. military. Finally, Baudoin also brought a state tort claim against the individually-named Defendants for intentional interference with contract. Defendants responded by filing a Rule 12(b) motion to dismiss on the grounds that Section 13 of the PEA dictated that the disputes at issue were subject to binding arbitration. On July 27, 2007, the district court issued a memorandum ruling and a judgment. In its ruling, the district court held that the parties had entered into a valid agreement to arbitrate, and that the dispute between the parties fit squarely within the parameters of the arbitration clause. The district court granted Defendants' motion and dismissed without prejudice Baudoin's claims for breach of the PEA and violation of USERRA, finding that they were subject to arbitration. The district court also dismissed without prejudice Baudoin's state law intentional interference with contract claims against the individually-named Defendants, declining to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law claims that were not subject to arbitration. Baudoin timely filed his notice of appeal.

## STANDARD OF REVIEW

We review a federal district court's interpretation of contracts de novo. See Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir. 1993) (internal citation omitted). Similarly, we review a district court's ruling on a motion to compel arbitration de novo. Garrett v. Circuit City Stores, Inc., 449 F.3d 672, 674 (5th Cir. 2006) (internal citation omitted).

## DISCUSSION

The central issue on appeal is whether Section 13 of the PEA that Baudoin and MLAC entered into compels arbitration of the present dispute. Baudoin maintains that his claims against MLAC are not subject to arbitration, and urges this Court to reverse the district court's determination to the contrary.

Defendants assert that the district court's dismissal of Baudoin's claims for breach of contract and violation of USERRA should be affirmed. We first address the scope of the arbitration provision. We then turn to whether Baudoin's USERRA claim is subject to the arbitration provision, noting that the resolution of this claim determines whether the court has supplemental jurisdiction over Baudoin's related state law claims. Finally, we determine whether Baudoin's breach of contract claim is subject to the arbitration provision.

Scope of the Arbitration Clause

As the district court properly recognized, when determining whether a dispute is subject to arbitration, a court must engage in a two-step process. First, it must determine whether a valid agreement to arbitrate exists between the parties. Fleetwood Enters. Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002) (internal citation omitted). If so, it must then determine whether the dispute at hand fits within the parameters of the arbitration agreement. Id. The parties do not disagree that they executed a valid arbitration agreement; therefore we turn to the second step.

Federal courts have long adhered to a policy of favoring arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[T]he Courts of Appeals have . . . consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree."). Likewise, the Louisiana Supreme Court has written:

> . . . even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Therefore, even if some legitimate doubt could be hypothesized, this Court, in

conjunction with the [United States] Supreme Court, requires resolution of the doubt in favor of arbitration.

Aguillard v. Auction Mgmt. Corp., 908 So. 2d 1, 18 (La. 2005). This Court has also distinguished between "narrow" and "broad" arbitration clauses. Hornbeck, 981 F.2d at 754-55. Narrow arbitration clauses are ones where the language of the clause requires the arbitration of disputes "arising out of" the agreement, whereas broad arbitration clauses are those where the language of the clause requires arbitration of any dispute that arises out of or relates to" the agreement, or disputes that are "in connection with" the agreement." Coffman v. Provost * Umphrey LLP, 161 F. Supp.2d 720, 725 (E.D.Tex. 2001). We have previously explained that "if the clause is narrow, the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause." Hornbeck, 981 F.2d at 755. With this precedent in mind, we hold that Section 13 of the PEA is a narrow arbitration clause that does not compel arbitration of Baudoin's claims of breach of contract and violation of USERRA against MLAC.

The district court erred by looking at the language in the arbitration clause in isolation, without considering the context under which that language appears in the PEA. Here, the arbitration clause is only contained within the severability section, and when reading the section as a whole, we are persuaded that this is a narrow arbitration clause that applies only to disputes regarding the validity or enforceability of any portion of the contract or disputes regarding reformation. MLAC does not dispute that USERRA renders certain provisions of the contract invalid and unenforceable. MLAC contends only that Baudoin entered into a new, subsequent oral agreement. MLAC is not seeking to enforce or reform, for example, paragraph 10 of the original written contract, which gives MLAC the right to terminate Baudoin's employment if the parties cannot

reach an agreement to accommodate one another if service in the Armed Forces prevents Baudoin from rendering full-time services to MLAC.

The district court stated that construing the arbitration clause narrowly would "produce[ ] an absurd result and deprive[ ] the preceding sentence concerning severability and the survival of the residual contract almost meaningless." We disagree. For example, the sentence directly following the arbitration clause states: "The purpose of such arbitration shall include reformation of this Agreement, retroactive in effect, if possible, to make the Agreement valid, binding, and enforceable, in keeping with the terms and spirit of the original Agreement as much as possible."

This Court interprets the section entitled Severability as allowing arbitration only of claims that deal with the validity of a portion of the contract or the need for reformation. The abovementioned sentence allows the arbitrator, after determining the validity of the section, to retroactively reform the PEA, taking into account its determination of the validity of the section. Without this sentence, the arbitrator could only declare portions of the agreement valid or invalid, but could not go the further step of actually reforming the agreement to make it valid, binding, and enforceable. The sentence serves a function of allowing the agreement to remain valid, even if a portion of the agreement is found to be invalid. The sentence does not create a broad arbitration provision that extends the scope of the arbitration proceedings to disputes beyond the validity of a section of the PEA.

Defendants urge this Court to adopt a broad reading of the arbitration clause, but the plain language of the PEA prevents such a result. As noted above, the language preceding and following the arbitration clause in Section 13 only addresses the issue of validity; to interpret the arbitration clause to include Baudoin's claims of violation of USERRA and beach of contract would go against the clear reading and meaning of Section 13. Similarly, Defendants' attempts

to convert Baudoin's claims into issues of validity is unavailing. The Defendants do not deny that parts of paragraph 10 are rendered unenforceable, nor do they seek to reform the PEA, and accordingly, there is no dispute regarding validity or reformation to arbitrate.

USERRA Claim

The Defendants make two separate arguments as to why Baudoin's USERRA claim is subject to the arbitration provision contained in the PEA.

The Defendants first hinge their argument on the following statement in Baudoin's brief on appeal: "Paragraph 10 of the PEA is totally irrelevant since USERRA supercedes any contract or agreement that reduces, limits or eliminates in any manner any right of benefit provided under the federal legislation." However, we understand Baudoin as asserting that paragraph 10 is essentially inapplicable here because of the primacy of USERRA in resolving his claims. As noted above, the Defendants do not dispute that USERRA overrides portions of the PEA that might otherwise provide a defense to Baudoin's breach of contracts claims. Therefore there is no "dispute" or contest within the meaning of the PEA that is subject to the arbitration provision.

This Court affirmed a district court decision in Coffman v. Provost * Umphrey Law Firm, 161 F.Supp.2d 720 (E.D. Tex. 2001). See Coffman v. Provost Umphrey LLP, 33 Fed. Appx. 705 (5th Cir. 2002). In Coffman, the district court applied an arbitration clause narrowly in the context of a statutory sex-based discrimination claim. The district court held that because the plaintiff's "statutory claims could be maintained independently of the contract, such claims do not fall within the scope of the arbitration clause." Coffman, 161 F. Supp. 2d at 732. Here, as in Coffman, portions of the Employment Agreement may be relevant in litigating the statutory claim, but Baudoin may maintain his USERRA claims independently of the PEA. As explained by the Fourth Circuit, while parties may agree to arbitrate all disputes arising out of an employment

relationship, including statutory claims, the parties must evidence their intent to do so by enacting a sufficiently broad arbitration agreement. See Brown v. Trans World Airlines, 127 F.3d 337, 341-42 (4th Cir. 1997). As discussed above, the arbitration provision in the PEA is narrow and deals only with claims that portions of the contract are invalid or unenforceabe.

The Defendants also claim that Baudoin's USERRA claim is subject to binding arbitration pursuant to Garrett v. Circuit City Stores, Inc., 449 F.3d 672 (5th Cir. 2006). Garrett is distinguishable from this case. Ultimately, this Court held that USERRA claims do not override the enforcement of an arbitration agreement. The arbitration clause, however, at issue in Garrett was broad and governed all "claims arising out of cessation of employment . . . ." Id. at 674. Thus, the Court found that USERRA "does not conflict with the FAA's policy to encourage the procedural remedy of arbitration." Id. at 678. Garrett stands for the proposition that USERRA claims may be arbitrated, but it is distinguishable from this case because the arbitration clause found in the PEA has a narrow scope that does not extend to claims on issues other than disputes as to the validity of provisions.

Because the Court concludes that the USERRA claim is not subject to arbitration, we hold that the district court has federal question jurisdiction over this claim. As a result, the district court may exercise supplemental jurisdiction over Baudoin's breach of contract claims, and we now consider whether that claim is subject to arbitration under the PEA.

Breach of Contract Claim

In the Defendants' Motion to Dismiss, they conclusorily assert that Section 8 is vague and ambiguous, and follow this allegation with a legal conclusion that this necessarily renders the section unenforceable. On appeal, the Defendants' claim that Baudoin's claim to partnership is invalid or unenforceable because MLAC is a corporation and not a partnership. The Defendants then argue that

the word partnership in Section 8 does not mean "equal partnership." While the Defendants do not use the word "ambiguous" in their brief on appeal, it is clear from their arguments that they are alleging that the meaning of the word partnership in the PEA is unclear and ambiguous. The Defendants state "there was no meeting of the minds with respect to the nature and scope of the offer of 'partnership.'" We find this to be unpersuasive. The Defendants and Baudoin entered into, and operated under, an employment contract for the requisite two years, although the Court notes that Baudoin spent part of this time working for the United States Army at Walter Reed Army Medical Center. See Vishal Hospitality, LLC. v. Choice Hotels Intern., Inc. 939 So. 2d 414, 418 (La. App. 1 Cir. 2006) (stating "it is undisputed that the parties were operating under a franchise agreement, and did so for five years. . . . Clearly, there was a meeting of the minds as to the existence of a franchisee-franchisor relationship. While the exact terms of the agreement may be at issue, its existence is not."). Furthermore, the Defendants present no Louisiana or federal case law in support for the propositions that (1) the language actually is vague and/or ambiguous, and (2) that vague and/or ambiguous language necessitates a finding that the provision is unenforceable or invalid.

Under Louisiana state law, if the district court were to find the word "partner" ambiguous, the district court may then admit parole evidence to determine the parties intention. Starke Taylor & Sons, Inc. v. Riverside Plantation, 301 So. 2d 676, 679 (La. App. 3 Cir. 1974) (stating that "if the language of a written agreement is on its face ambiguous, the courts can consider parole evidence and all of the surrounding circumstances in an effort to determine the true intent of the parties"). Ambiguous language is not necessarily found to be invalid on its face. See, e.g., RCC Props., L.L.C. v. Wenstar Props., L.P., 930 So. 2d 1233, 1237 (La. App. 2 Cir. 2006) (disagreeing "with the trial court's finding that [a] servitude was invalid because the method

10

of measuring 'primary business' described by the servitude was ambiguous"). Instead, courts are charged with interpreting the ambiguous language in the contract to determine the intent of the parties. If a bare assertion by Defendants, without more, that whatever contract provision Baudoin sued under is unenforceable controlled our decision, Defendants would be able to bring any suit related to this contract into arbitration. Such a loophole would turn the narrow arbitration clause in this agreement into a broad one, rendering the actual language and structure of this narrow arbitration provision meaningless. We decline to do so.

This Court has explained that "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts. Therefore, 'generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . .'" Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 166 (5th Cir. 2004). The Defendants do not claim that any section of the PEA was enacted as a result of fraud or duress, and the Defendants do not claim that any section of the PEA is unconscionable. Louisiana caselaw analyzing arbitration provision disputes demonstrates that "invalidity" includes, yet is not limited to, contracts that contain provisions that are (1) unconscionable or (2) possess features of both adhesionary formation and unduly harsh substances. See Iberia Credit, 379 F.3d at 166-67 (citing Simpson v. Grimes, 849 so. 2d 740 (La. App. 3 Cir. 2000); Andry v. New Orleans Saints, 820 so. 2d 602, 603-04 (La. App. 5 Cir. 2002). While this Court does not find that these are the only instances when a contract provision may be found invalid or unenforceable, these cases provide the Court with guidance on what types of contract provisions are traditionally found to be invalid under Louisiana caselaw. The Defendants' attempts to allege invalidity, from language that is at most ambiguous, must fail.

Having determined that Baudoin's claims are not subject to arbitration, we also hold that the district court erred when it dismissed without prejudice Baudoin's claims of intentional interference with contract against the individually-named Defendants.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and we REMAND this case for proceedings consistent with this opinion.