Richard BLAUSTEIN, et al., Plaintiffs,

v.

Burt David HUETE, Defendant–
Appellant,

v.

Timothy Maier;  Christopher Maier;
Maier & Maier, PLLC,
Defendants–Appellees.

No. 09–31078
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 18, 2010.

Joseph S. Piacun, Gennusa, Piacun & Ruli, Metairie, LA, for Defendant–Appellant.

Jack Etherton Truitt, Counsel, Truitt Law Firm, L.L.C., Covington, LA, for Defendants–Appellees.

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge: *

Burt Huete appeals the dismissal of his claims against the law firm Maier & Maier, LLP, and its two partners, Timothy and Christopher Maier (collectively, "the Maiers") pursuant to a binding arbitration agreement.  Because we disagree with the district court's conclusion that Huete was a signatory to the contract containing the arbitration agreement, we reverse and remand.

I.

In October 2006, Huete filed an application for a provisional patent to cover the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Stalker, a wireless tracking device. That application listed Huete as one of the inventors, along with Richard and Gail Blaustein and Thomas Benjamin.[1] Those individuals formed Special Projects Limited, LLC ("SPL"), and hired the Maiers to serve as patent counsel. SPL and the Maiers entered into a written fee agreement detailing the representation. The agreement, which contained a binding arbitration clause, listed SPL as the client, with Huete and Richard Blaustein serving as signatories for SPL.

The relationship between Huete and the Maiers soon soured. Huete alleges that, unbeknownst to him, the Blausteins and the Maiers conspired to let the provisional patent lapse and then not list Huete as an inventor on the subsequent patent application. Huete eventually retained outside counsel, and the Maiers filed for the patent as Huete originally had wanted.[2] The Maiers then pulled out of the representation, citing a conflict of interest.

Huete sued the Blausteins and other members of SPL in state court; the Blausteins, in turn, sued Huete in federal court. Those suits were consolidated in federal court. The Blausteins and Huete then amended their complaints to add claims against the Maiers, who moved to dismiss Huete's claims on a number of grounds. The court determined that Huete was a party to the fee agreement between the Maiers and SPL and dismissed all of Huete's claims pursuant to the binding arbitration clause in that contract. *Blaustein v. Huete,* 2009 WL 2982928, at *3–*4 (E.D.La. Sept.11, 2009). Huete appeals.

1. The parties dispute the rightful inventor(s) of the Stalker. Huete claims that he is one of them; the Blausteins and Maiers claim he is not. That dispute is immaterial to the issues on appeal.

2. Huete claims that he was still harmed, because the patent application filed by the Maiers was deficient.

## II.

Huete claims that the court erred in holding that his signing the fee agreement as a representative of SPL was sufficient to bind him individually to the agreement. We review *de novo* a ruling on a motion to dismiss to compel arbitration. *Garrett v. Circuit City Stores, Inc.,* 449 F.3d 672, 674 (5th Cir.2006).

In its short opinion dismissing Huete's claims, the district court noted that "the Supreme Court has favored the liberal enforcement of arbitration clauses." *Blaustein,* 2009 WL 2982928, at *4. It noted, as well, its public-policy concern that Huete's argument, if accepted, "would render all arbitration agreements virtually unenforceable since parties would be able to sue in an alternative capacity and claim to be outside of the arbitration agreement." *Id.* at *3. Although there is a presumption favoring liberal construction of arbitration clauses, *Iowa Beef Packers, Inc. v. Thompson,* 405 U.S. 228, 230, 92 S.Ct. 859, 31 L.Ed.2d 165 (1972) (citation omitted), that presumption is not applicable to the threshold determination whether a party has agreed to arbitrate.[3] An examination of the "four corners of the agreement," *Bridas,* 345 F.3d at 355, reveals that Huete is not a signatory to the arbitration clause.

The arbitration clause states, in relevant part, that "[t]he Client and Maier & Maier PLLC jointly agree that any dispute, controversy, or claim between us arising out of or relating in any way to this engagement shall be resolved through binding

3. *Cf., e.g., Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 354 n. 4 (5th Cir. 2003) (citing *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069 (5th Cir.2002) (noting that ordinary contract principles, rather than the federal policy favoring arbitration, apply to the determination of whether there is a valid agreement to arbitrate)).

arbitration...." Although the substantive scope of that clause is broad enough to cover the issues Huete raises, the clause, by its very terms, only binds "[t]he Client and Maier & Maier" on claims "between us." It is readily apparent from the contract that "the Client" is SPL, which is listed as the sole client at the beginning of the contract and again at the end, with the signatures of two of its officers serving as the signature of SPL.[4] Huete signed the agreement, but only as a representative of SPL.[5]

Our limited decision, then, is that to the extent that the court held that the mere fact of Huete's signature as a representative of SPL was enough to bind Huete individually to the contract, the court erred. Whether Huete was in fact a client of the Maiers, and thus whether he actually has any individual claims against them separate from those assertable on behalf of SPL, has not yet been established. That can best be determined, if need be,[6] by the district court on remand.

We do not foreclose the possibility that Huete can be held to the arbitration agreement as a non-party beneficiary. In some circumstances, "[o]rdinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so." *Bridas,* 345 F.3d at 356 (citation omitted). It would be inappropriate for us to make that determination in the first instance; we leave it to the district court on remand.[7]

The judgment of dismissal is REVERSED and REMANDED. We express no view on what rulings the district court should make on remand.

---

4. *Cf.* La. Civ.Code Ann. art. 3016 (1998) ("A mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract.").

5. As for the district court's public-policy concern, we are content with the fact that, to the extent that a firm contemplates representing a corporate entity *and* its individual officers, and wishes to bind *all* of those clients to an arbitration clause, it can require that each sign an agreement stating such. That practice works well in other business contexts. *See, e.g., City of Millville v. Rock,* 683 F.Supp.2d 319, 327 (D.N.J.2010) ("Under the *Salzman [Sign Co. v. Beck,* 10 N.Y.2d 63, 217 N.Y.S.2d 55, 57, 176 N.E.2d 74 (N.Y.1961)]

rule, explicit evidence of a corporate officer's intent to expose himself to personal liability must be demonstrated by requiring the officer to sign any contract twice; once in his official capacity and once in his personal capacity".).

6. Or that court might dismiss the case for any of the number of other reasons the Maiers point to as warranting dismissal, on which we express no opinion.

7. Huete argues that enforcement of the arbitration clause would violate Louisiana public policy. We do not reach that issue, because it is not obvious whether Blaustein, individually, can be held to the contract at all. That has yet to be determined on remand.