RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

GEORGE WYSOCKI,

                *Plaintiff-Appellant,*

     *v.*

INTERNATIONAL BUSINESS MACHINE
CORPORATION, dba IBM, Inc.,

                *Defendant-Appellee.*

No. 09-5161

—————————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 08-00464—Karl S. Forester, District Judge.

Argued: October 9, 2009

Decided and Filed: June 16, 2010

Before: MARTIN, GUY, and McKEAGUE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Kevin C. Burke, LAW OFFICE, Louisville, Kentucky, for Appellant. Richard G. Griffith, STOLL KEENON OGDEN PLLC, Lexington, Kentucky, for Appellee. **ON BRIEF:** Kevin C. Burke, LAW OFFICE, Louisville, Kentucky, Lawrence I. Young, ROMINES, WEIS & YOUNG, P.S.C., Louisville, Kentucky, for Appellant. Richard G. Griffith, Elizabeth S. Muyskens, STOLL KEENON OGDEN PLLC, Lexington, Kentucky, for Appellee.

     McKEAGUE, J., delivered the opinion of the court, in which GUY, J., joined. MARTIN, J. (pp. 11-13), delivered a separate concurring opinion.

—————————————

## OPINION

—————————————

     McKEAGUE, Circuit Judge.  Plaintiff-Appellant George Wysocki alleges that defendant-appellee International Business Machines ("IBM") refused to properly reintegrate Wysocki as a data administrator after he returned from military service in Afghanistan, in

violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Before he was terminated, Wysocki signed a general release (the "Release") as part of an Individual Separation Allowance Plan he negotiated with IBM. In return, Wysocki received over $6,000. After signing the Release, Wysocki filed suit against IBM for violating his USERRA rights and IBM filed a motion to dismiss. The district court converted IBM's motion to dismiss into a motion for summary judgment and granted it, after determining that Wysocki voluntarily and knowingly released any claims against IBM.

On appeal, Wysocki argues that the district court abused its discretion when it converted his motion to dismiss into a motion for summary judgment and that 38 U.S.C. § 4302(b) of USERRA supercedes the Release. We affirm the district court's decision.

## I.  Background

In July 2007, Wysocki returned from military service in Afghanistan and reported back to IBM. Immediately prior to his military service, Wysocki had worked as an IBM database administrator. When he returned, Wysocki notified his supervisor that his skills had diminished while on military service, and that he would need time to update his knowledge of IBM's programs, software, and technology. When he had previously returned from military service, IBM had provided shadowing and assistance from other employees which allowed Wysocki to reintegrate; however, this time, IBM refused any training or assistance. Wysocki alleges that IBM's refusal to assist him in reintegrating violated his USERRA rights and that, despite IBM's knowledge and understanding of USERRA, that IBM terminated Wysocki's employment without cause and in direct violation of USERRA on October 15, 2007.

On the same day that his employment with IBM was terminated, Wysocki signed the Release as part of an Individual Separation Allowance Plan he negotiated with IBM. The language of the Release is broad and, although it did not specifically refer to USERRA by name, it states that Wysocki waives "all claims, demands, actions or liabilities [he] m[ight] have against IBM of whatever kind," and includes within its scope "any other federal, state or local law dealing with discrimination in employment including, but not limited to, discrimination based on . . . veteran status . . . ." (R. 15, Countercl. ¶ 5; R. 14, Ex. A - Release.) The Release gave Wysocki a twenty-one day period to consider it before signing,

and a seven day period after signing to revoke his acceptance. Wysocki received $6,023.65 as a gross severance payment for signing the Release. The Release specifically instructed Wysocki to consult with an attorney before signing, and this instruction was displayed prominently in capital letters and underlined at the top of the Release. Wysocki accepted the severance payment, did not exercise his right to revoke his acceptance, and he has not tendered the severance payment to IBM.

Wysocki filed a complaint on May 12, 2008 alleging that IBM discriminated against him in violation of USERRA. On September 3, 2008 IBM answered Wysocki and simultaneously filed a Rule 12(b)(6) motion to dismiss and a counterclaim. Wysocki filed his response to IBM's motion to dismiss on October 10, 2008. On November 6, 2008 IBM filed a reply in support of its 12(b)(6) motion which included an affidavit from Dorothy Morris, a partner in IBM's Human Resources Department. This affidavit stated that Wysocki "voluntarily executed the Release . . . [and] was given adequate time to read the document and review the terms and conditions that it contained." (R. 24, Reply - Morris Aff. ¶ 2.)

Wysocki originally filed the case in the Western District of Kentucky, but sought and was granted transfer to the Eastern District of Kentucky. The order transferring the case to the Eastern District of Kentucky issued on November 12, 2008. On January 26, 2009 District Judge Forester upheld the Release and granted summary judgment to IBM. The district court treated IBM's motion to dismiss as a motion for summary judgment and relied on matters outside the pleadings.

Wysocki appeals both the district court's decision to convert the motion to dismiss into a motion for summary judgment and its determination that 38 U.S.C. § 4302(b) of USERRA did not supercede the Release.

## II. The Motion for Summary Judgment

IBM submitted, and the district court considered, matters outside the pleadings; consequently, the district court converted the motion to dismiss into a motion for summary judgment. The federal rules require that if, in a 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as

one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). We review the district court's decision to convert a 12(b)(6) motion to dismiss into a motion for summary judgment for abuse of discretion.  *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 203 (6th Cir. 1998).  A decision will be reversed for abuse of discretion only if we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).  Where "one party is likely to be surprised by the proceedings, notice is required," but generally, "[w]hether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case." *Salehpour*, 159 F.3d at 204; *see also Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

We find that it was not an abuse of discretion for the district court to determine that Wysocki had notice that the motion to dismiss might be converted into a motion for summary judgment and that he had a reasonable opportunity to present materials outside the pleadings.  Defendant IBM filed its motion to dismiss on September 3, 2008 and attached a copy of the Release, a document outside the pleadings which, if the district court considered it, would require the district court to covert the motion to dismiss into a motion for summary judgment.  IBM specifically mentioned in the memorandum supporting its motion that: "On a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings may be presented and considered by the Court . . . . If the court considers such matters, the motion to dismiss should be treated as one for summary judgment under Rule 56."  (R. 14, Mem. at 3) (citation omitted).  Thus, IBM's motion to dismiss both introduced the actual Release and informed Wysocki that the motion to dismiss could be converted into a motion for summary judgment.

Wysocki filed his response to IBM's motion to dismiss on October 10, 2008.  In it he discussed case law explaining that, as a general proposition, the non-moving party should receive notice and an opportunity to supplement the record before a district court converted a 12(b)(6) motion into a motion for summary judgment.  Wysocki did not, however, even attempt to apply this case law to his situation.  He did not state that he needed any additional

discovery or an opportunity to supplement the record, and his response clearly indicated that Wysocki understood that the court might grant summary judgment. On November 6, 2008 IBM filed a reply in support of its 12(b)(6) motion which included an affidavit from Dorothy Morris, a partner in IBM's Human Resources Department. Morris's affidavit constituted additional material clearly outside the pleadings which, if considered by the district court, also required the district court to convert the motion to dismiss into one for summary judgment.

The language in IBM's initial memorandum and the fact that it included the Release in its motion to dismiss and attached Morris's affidavit to its reply, put Wysocki on notice that the court might consider items outside the pleadings. The district court construed the motion to dismiss as a motion for summary judgment and ruled on January 26, 2009. Wysocki had nearly five months after IBM filed its initial motion to dismiss, and nearly three months after IBM filed its reply, to request discovery or to file an affidavit or additional materials supporting a denial of summary judgment.[1] Under the facts presented here, the district court's decision to convert the motion to dismiss into one for summary judgment was not an abuse of discretion.

### III. The USERRA Claim

We review the district court's grant of summary judgment de novo. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Whether Wysocki could waive his USERRA claim through the Release is a matter of statutory interpretation, and depends on the meaning of 38 U.S.C. § 4302. In matters of statutory interpretation, we look first to the text and, if the meaning of the language is plain, then "the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (citation

---

[1]Indeed, Wysocki notes on appeal that the district court had no evidence of his "military experience and length of service with IBM," or of his "salary or benefits to gauge sufficiency of consideration," or of "any facts and circumstances preceding the execution of the [Release] either." (Appellant Br. 12-13). However, at no point has he actually presented any factual information that the Release was not signed knowingly or voluntarily. More importantly, this missing information appears to fall entirely within Wysocki's personal knowledge, and could have been supplied by him via affidavit without any need for discovery after he became aware that the court might consider matters outside the pleadings.

omitted); *see also Thompson v. North American Stainless, L.P.*, 567 F.3d 804, 806 (6th Cir. 2009).

USERRA has a specific provision, 38 U.S.C. § 4302, dealing with its relation to other laws, plans, and agreements.[2]  Section 4302 establishes that:

> (a) Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.
>
> (b) This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302.  Wysocki argues that the Release is a contract or agreement that eliminates his rights and benefits under USERRA and, therefore, that it is automatically superseded by the language of § 4302(b).

**A.**

Initially, we note that the rights and benefits protected in § 4302 are defined in 38 U.S.C. § 4303(2):

> (2) The term "benefit", "benefit of employment", or "rights and benefits" means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

---

[2]We note that the only issue we are deciding is whether Wysocki could waive, through a release he personally agreed to, USERRA rights that had already matured.  We are not deciding, for instance, whether an agreement that eliminated a veteran's USERRA rights as a condition of initial employment or through a collective bargaining agreement would be valid.

The rights and benefits listed in § 4303(2) are all substantive rights. They do not deal with the procedure or process for enforcing those rights and benefits. Arguably, applying the definition in § 4303(2) to § 4302, the only "rights" and "benefits" protected in § 4302 are substantive, not procedural, rights; therefore, § 4302(b) does not prevent veterans from waiving their procedural rights because it does not apply to a waiver of a veteran's procedural rights. Under this reading, since the Release waived all of Wysocki's procedural and substantive rights, and since the waiver of all of Wysocki's procedural rights, which is not affected by § 4302, would prevent this suit, summary judgment for IBM would be appropriate.

The district court followed this reasoning, and IBM urges it upon us. Moreover, this conclusion is supported to some degree by prior case law in this circuit, which recognized, along with other circuits, the distinction between procedural and substantive rights for the purposes of § 4302. In particular, in *Landis v. Pinnacle Eye Care*, *LCC*, we enforced a contract providing for the arbitration of a veteran's USERRA claim. 537 F.3d 559, 562 (6th Cir. 2008). *Landis* based its reasoning on *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672 (5th Cir. 2006), which discussed the definition of rights and benefits provided in § 4303(2), as it applies to § 4302(b), and recognized the distinction between procedural and substantive rights. *Landis*, 537 F.3d at 562 (discussing *Garrett*, 449 F.3d 672, 674-80).

Wysocki distinguished this case in part from *Landis* by noting that this case involves a "wholesale contractual elimination of all methods to enforce USERRA's rights and benefits." (Appellant Reply Br. 8). We agree. We enforced the arbitration provision at issue in *Landis* because arbitration still "presents a fair opportunity for a claimant to present and prevail on a claim of a USERRA violation." 537 F.3d at 563. This is so because "[b]y agreeing to arbitration, a party does not forego the substantive rights provided by the statute, but rather it submits its claims to an arbitral forum instead of a judicial forum." *Id.* at 562. Here, however, the Release purports to preclude Wysocki from advancing a USERRA claim in any forum, ever. An agreement that eliminates all of a veteran's procedural rights also eliminates, for all practical purposes,

all of the veteran's substantive rights.   Thus, enforcing the Release would provide Wysocki with no opportunity to present and prevail on a USERRA claim, much less the "fair opportunity" required by *Landis*.   The agreements at issue in *Garrett* and *Landis* were found not to implicate § 4302 because they did not extend to substantive rights and still allowed for a "fair opportunity" to advance those rights.   Here, however, the Release squarely implicates § 4302.

## B.

However, the fact that § 4302 applies to the Release, does not mean that the Release is automatically superceded by § 4302.   While § 4302(b) supercedes any law, plan or agreement that "reduces, limits, or eliminates in any manner any right or benefit provided by this chapter," its application is limited by § 4302(a), which exempts any law, plan or agreement that is "more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter" from the operation of § 4302(b).   Therefore, the critical inquiry is whether the Release is exempted from the operation of § 4302(b) by § 4302(a), because the rights it provided to Wysocki were more beneficial then the rights that he waived.

In determining whether the rights Wysocki received in exchange for signing the Release were more beneficial than the rights he gave up, we are cognizant of the fact that other courts have recognized that USERRA's provisions are to be liberally construed in favor of veterans. *See Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir. 2004) ("[W]e construe USERRA's provisions liberally, in favor of the service member."); *McGuire v. United Parcel Serv.*, 152 F.3d 673, 676 (7th Cir. 1998) ("USERRA is to be liberally construed in favor of those who served their country."); *see also Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980) (stating that USERRA's predecessor "is to be liberally construed for the benefit of the returning veteran").   We also note that the legislative history clearly envisioned that veterans would be able to waive their individual USERRA rights by clear and unambiguous action. *See* H.R. Rep. No. 103-65, at 20 (1993), *reprinted in* 1994 U.S.C.C.A.N. 2449, 2453 ("The Committee wishes to stress that rights under chapter 43 belong to the claimant, and he or she may waive those rights,

either explicitly or impliedly, through conduct."); S. Rep. 103-158, at 41, *available at* 1993 WL 432576 (Oct. 18 1993) ("The rights under chapter 43 belong to the employee and, as such, can only be waived through unambiguous and voluntary action by the employee."); *see also* WILLISTON ON CONTRACTS § 73:7 (4th ed.) ("[B]ecause releases are in the nature of settlements, the strong public policy in favor of encouraging the resolution of disputes is also implicated, and courts will interpret releases to further that policy."), 66 AM. JUR. 2D *Release* § 2. Clearly, the ability to waive their USERRA rights without unnecessary court interference, if they believe that the consideration they will receive for waiving those rights is more beneficial than pursuing their rights through the courts, is both valuable and beneficial to veterans.

In this case, the Release used clear and unambiguous language and involved a valuable amount of consideration. The Release stated that it covered claims based on "veteran status." This clear and unambiguous language informed Wysocki that he was waiving his USERRA rights and, in exchange for signing the Release, Wysocki received over $6,000. Under these circumstances, it appears from the record that Wysocki understood that the Release eliminated his USERRA rights, that he signed the Release because he believed that the rights provided in the Release were more beneficial than his USERRA rights and, therefore, that the Release is exempted from the operation of § 4302(b) by § 4302(a). Wysocki has not presented any argument or evidence to the contrary, nor do we find any such evidence in the record. Furthermore, there is no evidence of mistake, incapacity, fraud, misrepresentation, unconscionability, or duress. We also note that Wysocki was encouraged to see a lawyer and had ample time to consider the Release before he signed it.[3] In short, we hold that § 4302 does not invalidate the Release.

---

[3]Generally, release is an affirmative defense that must be pled by the defendant, which includes showing that the release was fairly executed and fairly represented the amount to which the claimant was entitled. *See generally* 5 KY. PRAC. METHODS OF PRAC. § 41:14 (4th ed. 2009); 66 AM. JUR. 2D *Release* §§ 40-41; 76 C.J.S. *Release* § 84 ("The burden of establishing a release is on the party relying on it, but, where a release . . . is established, the opposing party has the burden of proving facts rendering the release void."). Here, IBM specifically pled release as an affirmative defense, and provided a copy of the Release and an affidavit attesting to the fact that Wysocki voluntarily signed the Release. After the affirmative defense of release is asserted, the plaintiff may show the invalidity of the release, which can be done by showing mistake, incapacity, fraud, misrepresentation, unconscionability, or duress. *See generally* 5 KY. PRAC. METHODS OF PRAC. §§ 41:4-6; WILLISTON ON CONTRACTS § 73:14 (4th ed.).

**IV. Conclusion**

As Wysocki had notice that the district court might convert IBM's motion to dismiss into a motion for summary judgment, and had a reasonable opportunity to present additional material and to request discovery, we find that the district court did not abuse its discretion in converting the motion to dismiss into a motion for summary judgment. Furthermore, we find that the Release is valid because, while we find that 38 U.S.C. § 4302 applies to a waiver of all procedural rights, § 4302 does not prevent Wysocki from releasing his USERRA rights. As a result, we **AFFIRM** the district court's decision.

————————————————

**CONCURRENCE**

————————————————

BOYCE F. MARTIN, JR., Circuit Judge, concurring.   This case presents a question of first impression in the federal courts—the construction and application of 38 U.S.C. § 4302.  Section 4302 is an exceedingly strange statute, at least as applied to contractual waivers of rights, in that it bases the validity of an agreement on whether enforcement results in a situation "more beneficial" than the hypothetical scenario that would have existed had the plaintiff litigated rather than waived his USERRA rights. I cannot recall ever having encountered anything remotely similar in my more than thirty years on the bench.  When confronted with a case in the right posture—a plaintiff placing the waiver squarely at issue with factual support and seeking rescission under section 4302—section 4302 raises fascinating questions about what it means for one thing to be "more beneficial" than something else and how courts are to make that determination.

But the case is not before us in the right posture.  Wysocki brought a USERRA claim without mentioning the Release.  Then, when IBM asserted the Release as an affirmative defense, Wysocki argued the law—that section 4302 somehow automatically invalidates the Release—instead of coming forward with evidence to create a dispute over whether the Release resulted in a situation more beneficial than his USERRA rights.  This case is, therefore, not the right vehicle for broad statements about the application of section 4302.  I applaud the majority's exercise of restraint in deciding this case narrowly instead of permitting these bad facts to result in bad law.

I concur without reservation in Part II because IBM's pleadings and the Federal Rules of Civil Procedure put Wysocki on notice that IBM's motion could be decided under Rule 56.  However, Wysocki did nothing to supplement the record with evidence or an affidavit that would create a fact question on the key issue regarding the Release—whether the consideration received in return for executing the Release was more beneficial than his rights under USERRA.  I also concur without reservation in

Part III.A.  The effect of the Release is to eliminate all of Wysocki's procedural rights to enforce the protections of USERRA, in addition to eliminating those substantive protections as well.  This complete elimination of procedural options clearly deprives Wysocki of the "fair opportunity" to enforce his USERRA rights required by *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 563 (6th Cir. 2008).  Thus, the Release implicates 38 U.S.C. § 4302.  It remains for future courts to determine what level of elimination of discreet procedural options, short of wholesale elimination, fails the "fair opportunity" test.

That leaves part III.B, discussing whether section 4302 renders the Release unenforceable.  I concur in Part III.B *as I interpret it*, so I will explain my understanding of the majority's analysis.  The critical inquiry under section 4302 is whether the waiver of USERRA rights results in a situation more beneficial to the veteran than if the veteran had asserted his USERRA rights.  I completely agree with the majority that both the text and legislative history of section 4302 indicate that a veteran should be able to waive his rights, *so long as* the waiver passes the test created by section 4302.  Furthermore, I do not read section 4302 to affect the law's general preference for enforcing contractual waivers of rights, as noted by the majority, *ante* at 9.  Stated differently, though section 4302 drastically alters the test for determining the enforceability of a waiver, it does not change the general sentiment that courts should not hesitate to enforce legally compliant waivers.

The majority properly focuses on three facts in determining that the Release passes section 4302 muster.  First, the Release unambiguously seeks to waive all of Wysocki's USERRA rights, or in the Release's words, his rights based on "veteran status."  Second, Wysocki received substantial consideration in return for executing the Release.  What I want to make clear is that these two facts, standing alone, are not sufficient to find that the Release satisfies section 4302.  Just because (1) a waiver clearly declares an intent to waive USERRA rights and (2) the veteran received substantial consideration does not permit the inference that the consideration was more beneficial to the veteran than his USERRA rights.  Stated differently, the face of the

Release does not allow for a conclusion of enforceability. At the most, it satisfied IBM's initial burden of production in asserting the Release. The burden then shifted to Wysocki to come forward with evidence calling into question the Release's satisfaction of section 4302. This brings us to the third, and most critical, fact in this case.

In addition to producing the Release, IBM presented evidence that Wysocki signed the Release knowingly, voluntarily, and not under duress. In response, Wysocki presented nothing but an incorrect legal argument that section 4302 invalidated the Release as a matter of law. He presented no evidence indicating that he was under duress or did not knowingly waive his USERRA rights. And more to the point, he did not present any evidence that would suggest that the money that he received for signing the Release was less beneficial than his USERRA rights, and thus inadequate under section 4302(a). An affidavit likely would have sufficed to create a question of fact that would have required the district court, and ultimately this Court, to determine what it means for one thing to be "more beneficial" than something else. Because Wysocki presented no such evidence, I agree with the majority that the proper conclusion on this record is that the Release resulted in a situation more beneficial to Wysocki than his USERRA rights and was thus enforceable under section 4302(b). Understanding the majority's analysis in this way, I concur.