NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0404n.06

No. 12-2063

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Apr 23, 2013*

DEBORAH S. HUNT, Clerk

KSR INTERNATIONAL COMPANY,    )
                              )
    Plaintiff-Appellant,       )    ON APPEAL FROM THE
                              )    UNITED STATES DISTRICT
v.                            )    COURT FOR THE EASTERN
                              )    DISTRICT OF MICHIGAN
DELPHI AUTOMOTIVE SYSTEM, LLC, )
                              )
    Defendant-Appellee.        )    O P I N I O N

BEFORE: NORRIS, COOK, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff KSR International Company appeals the dismissal of its complaint asserting claims against Delphi Automotive System, LLC, for breach of contract and, alternatively, for equitable remedies. Considering the express terms of the documents establishing the parties' contractual agreement, the district court held that KSR's breach of contract claim was based on a "strained interpretation" warranting relief only if the court "impermissibly read words into the parties' agreement that simply are not there." The court summarily rejected KSR's alternative claims for relief in equity (i.e., promissory estoppel, unjust enrichment and quantum meruit), noting that both parties are sophisticated commercial entities whose relationship was governed by a comprehensive express agreement. On appeal, KSR insists that its construction of the contract is facially plausible and that the district court erred by improperly crediting Delphi's

construction of the contract terms instead of viewing the complaint's allegations in the light most favorable to KSR. We disagree and therefore affirm.

## A. Standard of Review

The district court's dismissal of plaintiff's complaint for failure to state a claim for relief is reviewed de novo. *Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). However, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's obligation to provide the "grounds" for its claimed entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The factual allegations must "raise a right to relief above the speculative level." *Id.* The complaint must state a claim that is plausible on its face, i.e., the court must be able to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th

Cir. 2010). If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion. *Id.* However, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Bassett*, 528 F.3d at 430.

## B. Terms of Contract

According to the complaint, the parties entered into a contract on February 5, 2010, when Delphi accepted KSR's offer in response to Delphi's request for quotation for the manufacture of throttle position sensors. Tellingly, a copy of the contract is not attached to the complaint, but the complaint refers to it as being in the possession of Delphi. The complaint alleges the parties negotiated an agreed upon price for the parts and that Delphi contractually "agreed to pay KSR for its pre-production services which involved engineering, development and testing ('ED&T')." R. 1, Complaint at ¶ 6, Page ID # 2. For over a year, KSR provided parts to Delphi under the contract. In July 2011, Delphi communicated its intention to terminate the contract effective March 31, 2012. Acknowledging Delphi's right to terminate the contract "for convenience," KSR invoked its entitlement under the contract to recover unpaid costs of ED&T "services" furnished to Delphi prior to termination. Delphi refused, contending such recovery was not within KSR's exclusive remedy under the contract. When KSR commenced this action, Delphi moved to dismiss. The district court

granted the motion, agreeing with Delphi that the contract could not be reasonably construed as permitting the claimed recovery.

The parties acknowledge that the "Requirements Contract" for KSR's sale of throttle position sensors to Delphi incorporates by reference Delphi's 11-page "General Terms and Conditions." Both of these documents—referred to in, albeit not attached to, the complaint—were attached to Delphi's motion to dismiss. R. 5, Motion to Dismiss, Ex. A and B, Page ID # 37-51. They are central to KSR's claims and are properly considered part of the pleadings evaluated under Delphi's motion to dismiss without converting it into a motion for summary judgment. Among the General Terms and Conditions is Article 11, defining KSR's remedies in the event of "termination for convenience" by Delphi. *Id.* at Page ID # 44-45.[1] Focusing on its right to recover for "services"

---

[1]Article 11, in its entirety, provides as follows:

**11. Termination for Convenience**
In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of the Contract, at any time and for any reason, by notifying Seller in writing. Upon such termination, Buyer may, at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition. The purchase price for such finished goods, raw materials and work-in-process, and Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) *the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for*, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent. In no event will Buyer be required to pay for finished goods, work-

completed as of termination and accepted by Delphi but not previously paid for, KSR contends its pre-production engineering, design and testing efforts represented "services" that resulted in costs not fully paid for by Delphi prior to termination.

The district court rejected this argument, finding that Delphi agreed only to purchase throttle position sensors during a five-year period at a contract price of $4.0222 per part. The court observed that neither the purchase order nor the General Terms and Conditions included an agreement by Delphi to pay the total amount of KSR's ED&T expenses.

KSR maintains that the negotiations which culminated in the amended price of $4.0222 included a "Cost Breakdown Worksheet" showing that KSR's ED&T cost per unit was $.08.[2] R. 13, KSR's Opposition to Motion to Dismiss, Ex. A and B, Page ID # 159, 163. By virtue of Delphi's acceptance of KSR's quote based on the cost breakdown worksheet and continued performance at the amended price, KSR contends the contents of the worksheet became part of the parties' contract.

---

in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Seller's standard stock or that are readily marketable. Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

*Id.* at Page ID # 44-45 (emphasis added).

[2]This amount was assertedly arrived at by amortizing KSR's total ED&T costs in developing the throttle position sensor for Delphi ($507,208) over the anticipated full term (five years) and total volume (approximately 6,340,100 parts) of the contract.

Further, Delphi's acceptance of the worksheet is said to evidence its agreement to pay KSR's total ED&T expenses. At the time of Delphi's termination, KSR alleges that $344,633 of its total pre-production ED&T costs had not yet been recouped through Delphi's payments for parts delivered through March 31, 2012. R. 1, Complaint ¶ 24, Page ID # 5-6.

Delphi denies that the worksheet ever became part of the parties' contract. The district court assumed that KSR's quote and worksheet were part of the contract, but found them unavailing.

## C. District Court Ruling

Assuming the documents relied upon by KSR comprised the parties' contract, the district court concluded KSR had failed to state a valid breach of contract claim for recovery of pre-production ED&T costs. The court held the documents simply do not contain a promise by Delphi, express or implied, to pay for all of KSR's ED&T costs :

> These documents do not present Plaintiff's ED&T costs as a separate charge and they certainly do not contain Defendant's promise to pay for all the ED&T costs over the duration of the Purchase Order. In sum, a plain reading of the contract reveals that Defendant never agreed to pay for the entire amount of Plaintiff's ED&T costs related to the TPS project. To conclude that the contract requires Defendant to separately pay for Plaintiff's ED&T costs would impermissibly read words into the parties' agreement that simply are not there.

R. 17, Opinion at 6, Page ID # 245. The court also rejected KSR's characterization of its ED&T costs as "services" under Article 11 of the General Terms and Conditions:

> The Court rejects this interpretation because Defendant need only pay for "services that have been completed in accordance with the contract." Defendant did not contract with Plaintiff to perform ED&T "services" — it agreed only to purchase TPS parts at $4.0222 per piece for five years. Accordingly, Plaintiff's ED&T costs were not "services" completed in accordance with the parties' contract.

*Id.* at 7, Page ID # 246. The district court thus held that KSR's breach of contract claim was defeated by the very terms of the contract sued upon.

As to KSR's alternative claims for relief in equity—based on theories of promissory estoppel, unjust enrichment and quantum meruit—the court held that Delphi got what it bargained for under the contract. The court rejected the claim that Delphi inequitably received the benefit of KSR's ED&T efforts without paying for them in full: "Defendant paid for and received goods from Plaintiff; it did not order or receive 'services' from Plaintiff." *Id.* at 8. Page ID # 247.

### D. Claim Plausible on its Face?

KSR does not dispute the district court's finding that the contractual documents do not contain an express agreement by Delphi to pay the full amount of KSR's ED&T costs. KSR argues that its right under Article 11 of the General Terms and Conditions to recover "the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for" is broad enough to support a plausible claim for recovery of the costs of its ED&T "services." We find no error in the district court's rejection of this argument.

Despite KSR's artful characterization of its ED&T costs as "services," to bring them within the ambit of its exclusive remedy under the contract, it is evident on the face of the contract documents that this was a contract for the sale of goods, not services. The contract did not obligate KSR to furnish or deliver any services to Delphi. The contract documents contain no promise by Delphi to pay a contract price for ED&T or any other "services." The contract was solely for the sale of goods, throttle position sensors, at the contract price of $4.0222 per part. KSR does not deny

that it has recovered, as provided in Article 11, the contract price for all goods completed in accordance with the contract as of the termination date.

KSR attempts to recover more than this amount by shoe-horning an item of damages not specifically permitted under the exclusive remedy, ED&T costs, into a term appearing in Article 11 of the *General* Terms and Conditions, "services," that simply has no application to this specific contract for the sale of goods. The argument is creative, but we are not obliged, even under the liberal pleading standards of Rule 12(b)(6), to accept as true a mere label or conclusion couched as a factual allegation, *Twombly*, 550 U.S. at 555—especially where the very contractual documents on which the claim is based protest so loudly against the fit of the label. Considering the documents which KSR contends defined the parties' agreement, this was not a contract for services.

KSR insists that "services" is ambiguous and may plausibly be construed broadly enough to encompass the costs of its pre-production ED&T efforts. KSR urges us to accept as true its numerous allegations that Delphi promised to pay for all pre-production ED&T services. Viewed in the abstract, "services" could be ambiguous. However, KSR's breach of contract claim asks us to enforce the term as it appears in a specific contractual agreement, evidenced by contractual documents that are part of the record and properly considered part of the pleadings. Those documents show that Delphi promised to pay for goods, not services. The documents do not, on their face, support the allegations that Delphi promised to pay for the costs of KSR's ED&T efforts, except insofar as ED&T costs were a cost component of the agreed price per part. The contractual documents not only fail to support KSR's allegations but, inasmuch as the contract expressly

provides that it is integrated, *see* R. 5-3 General Terms and Conditions, Art. 29, Page ID # 51, positively defeat KSR's breach of contract claim.

The viability of KSR's breach of contract claim is thus distinguishable from that presented in *Mediacom Southeast LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396, 399-400 (6th Cir. 2012). In *Mediacom*, we reversed a Rule 12(b)(6) dismissal where the district court engaged in impermissible fact finding on the meaning of "service" or "services," contrary to the plaintiff's well-pleaded facts, based on improper consideration of a document not attached to the complaint and not central to the claim. Here, in contrast, KSR's allegations of an agreement by Delphi to pay for ED&T services are directly refuted by the terms of the very contractual agreement its breach of contract claim is based on.

The district court's dismissal of the claim based on a "plain reading" of the contract Delphi is alleged to have breached has not been shown to be improper. Rather, it is entirely consistent with the dictates of Michigan law. *See Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 42 (Mich. 2005) (holding that unambiguous contract must be enforced according to its plain language and that judicial revision of contract to enforce obligations in accordance with party's unilateral expectations is neither reasonable nor just); *New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 761 N.W.2d 832, 840 (Mich. App. 2008) (recognizing that goal of contract interpretation is to ascertain and enforce parties' intent based on plain language of contract). On de novo review, we concur in the district court's determination that the complaint fails to set forth a breach of contract claim that is plausible on its face.

### E. Equitable Relief

KSR's complaint also sets forth three claims for equitable relief, based on promissory estoppel, unjust enrichment and quantum meruit. KSR asserts these claims in the alternative, in the event its breach of contract claim fails. Yet, because each of these theories of relief is premised on KSR's asserted entitlement to full recovery of pre-production ED&T costs, a matter within the scope of the parties' express contractual relationship but not addressed in their integrated contract, the district court held that equity would not come to KSR's aid to enforce a duty it had refrained from bargaining for. In this holding, too, we find no error.

Under Michigan law, the elements of a claim for promissory estoppel are (1) a promise, (2) that the defendant should reasonably have expected to induce definite and substantial action or forbearance by the plaintiff, and (3) that did in fact induce such action or forbearance in circumstances such that the promise must be enforced if injustice is to be avoided. *Metropolitan Alloys Corp. v. Considar Metal Mktg., Inc.*, 615 F. Supp. 2d 589, 598 (E.D. Mich. 2009). Where Delphi's asserted promise—i.e., to pay for all of KSR's pre-production ED&T costs—is a matter within the scope, and clearly at odds with, the terms of the parties' integrated express contract, KSR's alleged reliance on the promise cannot be deemed reasonable such that enforcement of the promise is necessary to avoid injustice. *See Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. App. 1999) (affirming dismissal of promissory estoppel claim based on alleged oral promise contradicted by integrated contract).

KSR's unjust enrichment and quantum meruit theories fare no better. Michigan law recognizes that under the theory of quantum meruit, a contract may be implied at law to prevent

unjust enrichment when one party inequitably receives and retains a benefit from another. *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (Mich. App. 2006). However, a contract will not be implied if there is an express contract between the same parties on the same subject matter. *Id.* It follows that because KSR's claims for relief in equity stem directly from a relationship with Delphi covered by a written and integrated contract, and are premised on a claimed entitlement to recovery not provided for in the contract and outside the scope of the contract's exclusive remedy provision, the law will not imply a contract to rescue KSR from its failure to obtain Delphi's contractual agreement to pay for all ED&T costs. The unjust enrichment and quantum meruit claims were also properly dismissed.

## F. Conclusion

Finding no error in the district court's order dismissing KSR's complaint in its entirety, we **AFFIRM**.