**CH HOLDING COMPANY, Alan Ackerman, and CH/Brand Parking Associates, Plaintiffs,**

v.

**MILLER PARKING COMPANY, Nathan L. Miller Trust, Allison J. Miller Trust, David M. Miller Trust, Amy M. Weinstein, Emily Weinstein, Benjamin Weinstein, Matthew Stein, Andrew Stein, Janet Stein, Miller Parking Services, LLC, James N. Miller, and James N. Miller Revocable Trust, u/t/a dated 11/19/98, Defendants.**

No. 12–10629.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 12, 2013.

Robert A. Weisberg, Christopher A. Grosman, Carson Fischer, P.L.C., Bloomfield Hills, MI, for Plaintiffs.

Steven Z. Cohen, Steven Rabinovitz, Cohen, Lerner, Royal Oak, MI, Brad A. Danek, Julie L. Kosovec, Brooks Wilkins Sharkey & Turco, PLLC, Birmingham, MI, Abraham Singer, Kitch Drutchas Wagner Valitutti & Sherbrook, Detroit, MI, for Defendants.

***OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING CERTAIN COUNTS OF THE COMPLAINT, DISMISSING MOTION FOR TEMPORARY RESTRAINING ORDER, AND REMANDING REMAINING CLAIMS***

DAVID M. LAWSON, District Judge.

This matter is before the Court on the defendants' motion for judgment on the pleadings as to counts I through VII, X, and XI of the complaint, which assert claims against all of the defendants other than Miller Parking Services, LLC ("MLS"). Most of the issues raised by the motion and the plaintiffs' response were addressed by the Court in an opinion denying the plaintiffs' motion to remand the case to state court and an order denying their motion for reconsideration. The plaintiffs raise no substantive arguments in support of their claims or in opposition to the motion for judgment, other than those already dismissed by the Court in its earlier orders. Instead, they continue to flog their claim that "applicable case law makes clear that only plaintiffs have the right to pursue the alter ego claims—the trustee does not." In support of this point, the plaintiff cites the same three cases that it cited in its motion for reconsideration, insisting that its strained readings of them are correct and the Court is wrong. The Court remains unpersuaded. The Court will grant the motion for judg-

ment on the pleadings and dismiss counts I through VII, X, and XI.

Counts VIII and IX of the complaint allege conversion by James Miller of parking revenues from a certain parking lot in Detroit prior to December 2009. Counts XII through XIV allege related claims against James Miller and Miller Parking Services, LLC for conversion, trespass, and injunctive relief relating to operation of the lot and the alleged refusal by MPS to surrender the lot after the plaintiffs terminated the agreement under which Miller and his company occupied it. Those claims do not have any apparent relation to the other claims raised in the complaint, and the claims arise solely under state law. Therefore, the Court will remand those claims to state court under 28 U.S.C. § 1367(c).

## I.

The facts of the case were summarized in the Court's previous opinion denying the plaintiffs' motion to remand and need not be set forth in detail here. To summarize, the plaintiffs filed this lawsuit to attempt to collect a judgment they received in state court against now-bankrupt judgment debtors, but their targets are persons and entities who, the plaintiffs believe, should share the responsibility for payment. According to the complaint, a Michigan state court entered a judgment on June 30, 2009 against Miller Parking Company, LLC ("Miller Detroit") and its owner, Bruce Miller, for $3.1 million in favor of CH Holding and $625,000 in favor of Alan Ackerman, the plaintiffs in this case. The plaintiffs did not name Miller Detroit as a defendant in the present federal court action. The plaintiffs do not allege that there are any formal ties among Miller Detroit, Bruce Miller, and the defendants in here.

Defendant James N. Miller is Bruce Miller's son, and the other individual defendants (the Steins and the Weinsteins) are Bruce Miller's other children and grandchildren. James Miller, together with the other individual defendants, own Miller Parking Company of Chicago ("Miller Chicago"). The plaintiffs allege in their complaint that Miller Chicago is the *alter ego* of Miller Detroit, and this Court should disregard Miller Chicago's separate corporate existence and allow the plaintiffs to seize its assets to satisfy the state court judgment. The complaint also alleges that Bruce Miller is the *alter ego* of Miller Detroit and Miller Chicago, and therefore the assets of those companies also should be made available to satisfy the judgment. Following that logic, the complaint alleges that transfers of assets by Miller Chicago to its shareholders—the individual defendants in this case—should be set aside as fraudulent transfers, and those assets also should be used to pay the state court judgment.

The plaintiffs' complaint contains fourteen counts. Count I alleges that Miller Detroit and Miller Chicago are *alter egos,* and asks for judgment against Miller Chicago. Count II alleges that Bruce Miller, Miller Detroit, and Miller Chicago are *alter egos,* and asks for judgment against Miller Chicago. Count III alleges that James Miller, Miller Detroit, and Miller Chicago are *alter egos,* and asks for judgment against Miller Chicago. Count IV alleges an illegal distribution to the Miller Chicago shareholders under an Illinois statute, and asks for judgment against those shareholders. Count V alleges director liability under an Illinois statute against James Miller, the sole director of Miller Chicago, for the transfer of assets to the shareholders. Counts VI and VII allege fraudulent transfers under Illinois law under two different theories, and ask that the transfers of assets by Miller Chi-

cago to its shareholders be set aside. Count X alleges breach of a constructive trust that the plaintiffs contend should be imposed on the assets transferred to Miller Chicago's shareholders. Count XI alleges unjust enrichment against those same shareholders.

Counts VIII and IX of the complaint are directed against James Miller and MPS, and allege conspiracy and conversion of parking revenues from a certain Lafayette Street parking lot in Detroit, prior to December 2009. MPS acquired the assets of Miller Detroit after its bankruptcy, and plaintiff Ackerman alleges that James Miller and his company have continued to occupy and operate the Lafayette Street lot despite the fact that, in late 2011, CH Holding terminated the agreement under which MPS was operating. Counts XII through XIV allege related claims against James Miller and MPS for conversion and trespass, and seek damages and injunctive relief, relating to operation of the lot and the alleged refusal by MPS to surrender the lot after the plaintiffs terminated the agreement under which Miller and his company occupy it.

According to the complaint, the Miller Detroit trustee in bankruptcy, K. Jin Lim, also has filed an action against the same defendants to recover assets transferred by Miller Chicago to its shareholders. That action is pending in this Court.

The plaintiffs filed their complaint in state court on January 19, 2012. On February 13, 2012, two of the Weinstein defendants filed their notice of removal, in which all of the other defendants eventually joined. On March 15, 2012, Ackerman filed his amended motion to remand, which the Court denied in an opinion and order entered on November 6, 2012.

Defendants Weinsteins and Steins filed the present motion for judgment on the pleadings as to all claims against them.

Later, the Miller defendants filed a notice of joinder and concurrence in the motion, adding no further arguments and adopting the positions set forth in the original motion.

## II.

The defendants' motion for judgment on the pleadings seeks dismissal of counts I through VII, X, and XI of the complaint. They argue that the challenged counts must be dismissed because (1) the *alter ego* counts do not constitute a separate cause of action, and in any event the trustee is already pursuing claims for substantive consolidation and *alter ego* liability on the alleged fraudulent transfers; (2) the fraudulent transfer claims fail as a matter of law, because the plaintiffs are not creditors of Miller Chicago, and because the claims are precluded by the trustee's suit alleging the same cause of action to recover the same assets; and (3) the trustee is the only real party in interest, and the plaintiffs therefore are precluded from bringing their claims by Federal Rule of Civil Procedure 17(a)(1).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) applies the same standards that govern motions to dismiss. *See* Fed.R.Civ.P. 12(c); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir.2006); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir.2001). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir.2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993)). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible

on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678], 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir.2010).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir.2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir.2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir.2007) (citing Fed.R.Civ.P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir.2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335–36. If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997) (holding that plan documents could be considered without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not its associated documents). In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579 (6th Cir.2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335–336). "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir.2010) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir.2008)).

■ Of the issues raised by the defendants, the Court finds one dispositive: that the plaintiff may not pursue the *alter ego* and fraudulent transfer claims because they are precluded by the Miller Detroit bankruptcy and the trustee's suit alleging the same cause of action to recover the same assets. The plaintiffs' theory of recovery is based on the premise that Miller Detroit and Miller Chicago essentially were the same entity (that is, Chicago was Detroit's *alter ego* ), so the money and assets of Miller Chicago really belonged to Miller Detroit, and therefore the distributions Miller Chicago made to the Stein and Weinstein defendants should be recovered as property of Miller Detroit and made available to the plaintiffs as Miller Detroit's judgment creditors. The plaintiffs' avowed purpose in bringing this lawsuit is to satisfy the judgment they obtained against Miller Detroit. This case, then, amounts to little more than a turnover proceeding brought by a single creditor of a bankrupt entity. *See* 11 U.S.C. § 542(a).

■ However, the filing of a bankruptcy action cuts off the right of a creditor to proceed on its own, and gives the bankruptcy trustee the exclusive authority to recover and distribute all assets that are

the property of the bankrupt debtor's estate. "As a result of the filing of the corporate bankruptcy case[ ], [a judgment creditor] no longer has standing to pursue the recovery of the value of corporate assets for his sole benefit. A single creditor may not maintain an action on its own behalf if that creditor shares an injury common to all creditors and has been injured only in an incidental manner." *In re O'Donnell,* 326 B.R. 901, 2005 WL 1279268, at *4 (6th Cir. BAP 2005) (unpublished table decision). "To allow a creditor of the bankrupt to pursue his remedy against third parties on a fraudulent transfer theory would undermine the Bankruptcy Code policy of equitable distribution by allowing the creditor 'to push its way to the front of the line of creditors.'" *N.L.R.B. v. Martin Arsham Sewing Co.,* 873 F.2d 884, 888 (6th Cir.1989). Moreover, the filing of a bankruptcy petition imposes an automatic stay on any pending or prospective action to recover any assets of the bankrupt or to proceed on any claim against the debtor that arose prior to the filing of the bankruptcy petition. 11 U.S.C. § 362(a).

Counts I, II, and III of the complaint, labeled as *"alter ego"* claims, allege that the two companies "engaged in fraudulent transfers." To the extent that those counts might be construed to raise claims based on fraudulent transfers between the Miller entities, those claims would trench upon the prerogative of the Miller Detroit bankruptcy trustee, a prerogative he has exercised in the parallel action of *Lim v. Miller Parking,* 11–14422, where he seeks to recover the same assets from Miller Chicago, on the same basis. Therefore, those counts must be dismissed.

Similarly, counts IV and V, alleging illegal distribution to shareholders of Miller Chicago, can only be viewed as seeking to reach assets of Miller Detroit. The plaintiffs postulate that the shareholder distributions harmed them as creditors of Miller Chicago. *See* Compl. ¶ 65 (alleging that "[b]ased on the foregoing, [the distributions] were made in violation of applicable Illinois law and, therefore, are recoverable from [the defendants] by Plaintiffs *as creditors of and in satisfaction of their claims against* [Miller Chicago]" (emphasis added)). However, the plaintiffs have not pleaded any facts in the complaint to show that they had a direct relationship with Miller Chicago as creditors of that company. Therefore, they would have no standing to pursue any direct claim for illegal distribution to the shareholders, absent the contention that the Miller Chicago funds really were the property of Miller Detroit. As such, those claims are barred because, as the Court has already held in its prior orders, the plaintiffs seek to recover for their own exclusive benefit the same assets that the bankruptcy trustee is also seeking to recover for the benefit of all creditors; allowing such a claim would defeat the underlying purpose of the bankruptcy proceeding, which is to ensure equitable recovery and distribution of assets for the benefit of all creditors.

Counts VI and VII, which allege fraudulent transfers, are based on the same distribution to shareholders alleged in counts IV and V. Count VI alleges fraudulent transfer with actual intent to defraud, and count VII alleges constructive fraud because "[the distributions] were made by [Miller Chicago] without it receiving reasonably equivalent value while as alleged herein it was insolvent or was rendered insolvent as a result of [the distributions]." Compl. ¶ 76. As with counts IV and V, the plaintiffs have not alleged any facts to show either that they had an independent debtor-creditor relationship with Miller Chicago or to plausibly demonstrate that it was rendered insolvent by the transfers. The claims must be dismissed for the same

reasons that require dismissal of the illegal distribution claims. Counts X (breach of constructive trust) and XI (unjust enrichment) also derive from the *alter ego* and wrongful distribution claims and must be dismissed as well.

### III.

The remaining counts of the complaint are not related to the claims discussed above. Counts VIII and IX are direct against James Miller and allege conversion of parking revenues from a certain Lafayette Street parking lot in Detroit, prior to December 2009. Counts XII through XIV allege related claims against James Miller and Miller Parking Services, LLC (MPS), for conversion, trespass, and injunctive relief, relating to operation of the lot and the alleged refusal by MPS to surrender the lot after the plaintiffs terminated ·the agreement under which Miller and his company occupy it. The claims against Miller Parking Services, LLC do not have any apparent relation to the other claims raised in the complaint against the Weinstein, Stein, and Miller defendants. Miller Parking Services acquired the assets of Miller Detroit after its bankruptcy, and plaintiff Alan Ackerman alleges that James Miller and his company have continued to occupy and operate the Lafayette Street lot despite the fact that, in late 2011, CH Holding terminated the agreement under which MPS was operating.

■ Those claims were joined in the plaintiffs' complaint filed in state court, presumably because they arose against some of the common defendants. They are not "related to" the Miller Detroit bankruptcy. *In re Wolverine Radio Co.,* 930 F.2d 1132, 1142 (6th Cir.1991) (quoting *In re Pacor,* 743 F.2d 984, 994 (3d Cir. 1984)). Nor are they "so related to" the other claims in the complaint "that they form part of the same case or controver-

sy." 28 U.S.C. § 1367(a). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel v. City of Cincinnati,* 625 F.3d 949, 952 (6th Cir.2010) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.,* 89 F.3d 1244, 1254–1255 (6th Cir.1996)) (quotation marks omitted); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction").

The Court sees no useful purpose in retaining that portion of the case for adjudication. the plaintiffs originally chose the state forum, and there is no hint that they engaged in forum manipulation. Discovery here has not been completed. Although the plaintiffs filed a motion for temporary restraining order concerning the parking revenues apparently being collected by MPS, those parties have not engaged in any factual development of those claims in this Court. Therefore, the Court will remand the remaining claims to state court.

### IV.

The Court concludes that the plaintiffs' claims relating to *alter ego* liability and wrongful asset transfers must be dismissed because they relate to the Miller Detroit bankruptcy and are being pursued by the trustee of that estate. The remaining claims will be remanded.

Accordingly, it is **ORDERED** that the defendants' motion for judgment on the pleadings [dkt. # 35, 65] is **GRANTED IN PART.**

It is further **ORDERED** that counts I through VII, X, and XI of the complaint

are **DISMISSED WITHOUT PREJUDICE.**

It is further **ORDERED** that the remaining counts in the case are **REMANDED** to the Oakland County, Michigan circuit court.

It is further **ORDERED** that the plaintiffs' *ex parte* motion for temporary restraining order or preliminary injunction [dkt. # 31] is **DISMISSED.**